ELECTRICAL CONTRACTORS ASSOCI-
ATION OF GREATER BOSTON,
INC., Plaintiff, Appellant,

v.

LOCAL UNION 103, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS, Defendant, Appellee.

No. 71-1205.

United States Court of Appeals,
First Circuit.

Heard Feb. 24, 1972.

Decided April 12, 1972.

Harold Rosenwald, Boston, Mass.,
with whom Morris L. Deutsch, Robert P.

Weintraub, Bloom, Deutsch, Richmond, Rosenwald & Drachman, Boston, Mass., were on brief, for plaintiff-appellant.

Timothy J. Murphy, Boston, Mass., with whom Murphy, Lamere & Murphy, Boston, Mass., was on brief, for defendant-appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from the district court's refusal to enforce the decision of a collective bargaining conference committee in a suit brought under § 301(a) of the Labor Management Relations Act of 1947 (29 U.S.C. § 185(a) (1970) ) and 28 U.S.C. §§ 2201, 2202 (1970). The court below correctly viewed the case as presenting the single threshold question of whether the committee's decision was "final and binding" and therefore enforceable under General Drivers, etc. Local 89 v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). On the grounds that the decision was uncertain, indefinite, and inadequate to resolve the underlying dispute, the court denied relief, 327 F.Supp. 1177. We affirm.

The parties are in substantial agreement on most of the facts. Plaintiff-appellant, the Electrical Contractors Association of Greater Boston, Inc. (the Association), is a group of employers in the electrical contracting business. The Association and the Union,[1] defendant-appellee, are parties to a collective bargaining agreement which established, *inter alia*, a Joint Conference Committee. According to Article 1–3(b) of the agreement:

> "Said Conference Committee shall sit in judgment on all complaints and on all interpretations of this Agreement. Its decision shall be final and binding upon both parties hereto."

The Joint Conference Committee is composed of three Association and three Union representatives, and the agreement provides for arbitration in the event that the Committee is unable to resolve an issue presented to it.[2]

Underlying the instant litigation is a dispute over how many men should be assigned to operate core drilling machinery.[3] The Union recommends that two men be used for reasons of safety, and unless two men are used no core drilling work will be done. The Association insists that the number of men assigned is a managerial prerogative and that in most cases only one man is needed. The issue was discussed at length in the August 24, 1970, meeting of the Joint Conference Committee after the Association protested the use of two men per machine. No action was taken, and a vote to refer the issue to the Joint Safety Committee[4] for a safety ruling resulted in a tie. Nonetheless, the Joint Safety Committee discussed the matter at its October 27, 1970, and January 7, 1971, meetings, but took no action.[5]

---

1. Local Union 103, International Brotherhood of Electrical Workers.

2. The pertinent subsections of Article 1–3 of the collective bargaining agreement provide:

    "ARBITRATION CLAUSES
    "(c) Whenever the Joint Conference Committee fails to agree or settle questions regarding changes in this Agreement, the matter shall be determined through arbitration mutually agreed upon, and its decision shall be final and binding.
    (d) Whenever the Joint Conference Committee fails to agree upon a form of arbitration by mutual agreement, then the case shall be referred to The Council on Industrial Relations for the Electrical

Construction Industry of the United States and Canada."

3. A core drilling machine is used to bore through concrete floors, walls, and overheads.

4. Article 6–17 of the agreement provides:
    "There shall be a Joint Safety Committee of three members representing the Employers and three members representing the Union. They shall compile safety standards."

5. On October 27 it was agreed that any action would be deferred for a month while members familiarized themselves with the machinery. On January 7 there was discussion of members' observations.

On February 23, 1971, at the end of a lengthy meeting of the Joint Conference Committee, an Association member raised the core drilling issue and asked if the Union would change its position. The response was "no." Thereupon an Association representative made a previously prepared motion that "the assignment of men to core drilling equipment is the prerogative of the employer." A Union member added the phrase, "except where safety of men is involved." A further amendment was then added by an Association member: "as determined by the Joint Safety Committee." As finally amended, the motion was adopted unanimously,[6] the entire procedure lasting only five to ten minutes. The minutes of the meeting state simply:

> "Moved and voted that the assignment of men to core drilling equipment is the prerogative of the employer, except where safety of men is involved, as determined by the Joint Safety Committee."

Following this meeting the Union continued to use two men on the machinery, and the Joint Safety Committee has not promulgated any safety standards.

Contending that the February 23 vote conclusively resolved the core drilling dispute, the Association alleges that the Union's continued use of two men breaches the collective bargaining agreement. It construes the resolution as giving management the prerogative to assign one man to each machine unless the Joint Safety Committee rules otherwise. The Union, however, denies that the vote affected the core drilling dispute. Rather, it reads the resolution as recognizing management's right to assign personnel, i. e. the choice of *which* rather than *how many* individuals shall be assigned to each machine, unless overruled by the Joint Safety Commit-

tee's determination that a given man's health or safety would be imperiled.[7]

■■ According to the contract between the parties, decisions of the Joint Conference Committee are "final and binding." It is therefore clear that such decisions may be as enforceable as arbitration awards under General Drivers, Local 89 v. Riss & Co., *supra*. Cf. Local Union 24, International Brotherhood of Electrical Workers, AFL–CIO v. W. C. Bloom & Co., 242 F.Supp. 421 (D. Md.1965). However, before a court accepts the "award" of a grievance committee as the final resolution of a dispute, it must be assured that the decision was intended to and does, by fair and adequate procedures, settle the controversy. *See* Bieski v. Eastern Automobile Forwarding Co., 396 F.2d 32, 38 (3d Cir. 1968); Rothlein v. Armour & Co., 391 F.2d 574, 580 (3d Cir. 1968). As the Court noted in *General Drivers*:

> "[T]he policy of the Labor Act 'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.' United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566, [80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403;] *cf.* Retail Clerks v. Lion Dry Goods, Inc., 369 U.S. 17, [82 S.Ct. 541, 7 L.Ed.2d 503.] *Thus, if the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under § 301.*" 372 U.S. at 519, 83 S.Ct. at 791 (emphasis added).

■ The Association has not met its burden of proving that the February 23 resolution was the "chosen instrument for the definitive settlement" of the core drilling dispute. The controversy extended over several months and had been the subject of several long discussions. The Union remained adamant in its position, and so stated unequivocally on

---

6. The two Union members present cast all three Union votes.

7. The district court made no specific findings as to what meaning the parties attributed to the resolution at the time of the vote.

February 23, ten minutes before the vote. We find it extremely unlikely that after so consistently maintaining its position the Union would, without discussion, do a complete about-face. The resolution, ambiguous in its wording, prepared by management and presented on the heels of the Union's statement that its position remained unchanged, cannot be viewed as a joint settlement of the dispute.[8] The core drilling issue was not clearly the intended subpect of that vote nor did the vote clearly resolve the issue. To grant enforcement of this "award" would subvert rather than effectuate the policy favoring private settlement of labor disputes.

Similarly, because the controversy remains unresolved for purposes of § 301, declaratory relief would be inappropriate and premature.

Affirmed.

---

8. Had the motion explicitly stated that the *number* of men to be assigned was a managerial prerogative, there is little doubt that the vote would have been a tie rather than unanimous. This is therefore not an instance, as in Humphrey v. Moore, 375 U.S. 335, 351, 84 S.Ct. 363, 11 L.Ed. 2d 370 (1964), where it is mere idle speculation to assume that a different presentation would have brought different results.