UNITED MINE WORKERS OF AMERICA, DISTRICT NO. 2, and United Mine Workers of America, Local No. 1269, Appellants,

v.

BARNES & TUCKER CO.

No. 76–2548.

United States Court of Appeals, Third Circuit.

Argued May 6, 1977.

Decided Aug. 22, 1977.

Lloyd F. Engle, Jr., Melvin P. Stein, Kuhn, Engle, Blair and Stein, Pittsburgh, Pa., for appellants.

Wm. Alvah Stewart, III, Howard D. Schwartz, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, ROSENN, Circuit Judge, and LORD, Chief District Judge.[*]

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Appellant United Mine Workers ("the Union") initiated this action under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1970), to obtain specific enforcement of certain grievance settlements negotiated by the Union with Barnes & Tucker Co. ("the employer"). The district court dismissed the action on the ground that the matters raised by the Union were exclusively within the grievance procedures established by the parties' collective bargaining agreements and that the court therefore had no equitable power to deal with them. On this appeal, we must decide whether general assurances made by the employer as a part of grievance settlements are judicially enforceable. We conclude that under the circumstances of this case they are not, and affirm the district court's order dismissing the action.

### I.

District 2 and Local 1269 of the United Mine Workers of America represent approximately 1250 employees working at four Barnes & Tucker Coal Mines in Western Pennsylvania. From November 12, 1971, through November 12, 1974, the Union and the employer were subject to the National Bituminous Coal Wage Agreement of 1971 which governed the wages, hours, working conditions, and other terms and conditions of employment of Barnes & Tucker's production and maintenance employees. The Union and the employer are currently subject to the National Bituminous Coal Wage Agreement of 1974, which became effective on December 6, 1974, and which expires on December 6, 1977.

Both the 1971 and 1974 Agreements provide five-step grievance-arbitration procedures which culminate in final and binding arbitration. By the express terms of the Agreements, settlements reached at any step are final and binding on both parties. The grievance-arbitration procedures apply to disputes over the interpretation of the Agreements, to differences about matters not specifically mentioned in the Agreements, and to "local trouble of any kind." In addition, the Agreements prescribe separate grievance-arbitration procedures for health and safety disputes.

The 1971 and 1974 Agreements specifically prohibit the use of supervisory personnel to perform bargaining unit work, except in emergencies and except as such work is necessary for training employees. Both Agreements require the parties to observe pertinent state and federal safety laws and regulations. The 1974 Agreement restricts the use of new, inexperienced employees, defined as employees "with less than ninety (90) days prior underground mining experience."

Pursuant to the provisions of the Agreements, Local 1269 filed a series of grievances which were processed through various steps of the applicable procedures. The grievances relevant to this case fell into three categories: first, complaints regarding supervisors doing bargaining unit work; second, complaints alleging violations by the employer of state and federal regulations governing the movement of equipment in underground mines; and third, complaints relating to the assignment of new, inexperienced workers to jobs as operators and helpers at the mine face. It was to enforce a series of promises allegedly made by the employer as a part of the settlement of these grievances that the Union brought this suit.

[*] Joseph S. Lord, III, Chief Judge of the Eastern District of Pennsylvania, sitting by designation.

The evidence adduced at a hearing before the district court showed that the vast majority of grievances concerned supervisors performing bargaining unit work; some of the grievances, rather than dealing with specific instances of supervisors performing classified work, raised the problem generally. The Union offered testimony that in the course of negotiating settlements of these grievances the employer repeatedly made promises, some in writing and made a part of the record, that supervisors would not perform classified work. Similarly, the Union offered testimony that in the settlement of grievances protesting violations of safety guidelines, the employer repeatedly made general written assurances that it would comply with federal and state safety laws and regulations. And finally, the Union introduced into evidence a written agreement, executed in settlement of a particular grievance, by which the employer promised that employees with less than ninety days' underground experience would not be assigned as helpers "on continuous miners or roof bolting machines." Urging that these three types of promises were made as part of settlements which, by the terms of the collective bargaining agreement, were final and binding, and contending that Barnes & Tucker had failed to adhere to its promises, the Union requested the district court to enter a mandatory injunction compelling compliance with the settlements.

The district court found that the evidence of supervisors doing classified work failed to establish a company policy of violating the contractual prohibition; on the contrary, the court noted, Barnes & Tucker had taken substantial affirmative action to reduce, if not eliminate, instances of supervisors performing bargaining unit work. The court found that the employer had abided by its duty to consider and arbitrate all grievances related to the performance of classified work by supervisory personnel. In addition, the court stated, the employer had not attempted to avoid its obligation to consider and arbitrate the grievances regarding violations of safety regulations and use of inexperienced personnel. The court concluded that the matters raised by the Union's complaint and the evidence produced at the hearing were exclusively within the grievance procedure established by the collective bargaining agreement, and that the court therefore had no equitable powers to deal with them.

## II.

The Union argues that the grievance settlements in this case—specifically, the general promises contained therein—are entitled to the same enforcement as would be granted an arbitration award. The employer suggests, in response, that only arbitration awards, and not settlement agreements, are enforceable. We agree with the Union that where a collective bargaining agreement designates settlement agreements as being final and binding, the fact that a settled grievance does not proceed to arbitration does not preclude judicial enforcement of the settlement agreement.

The well established federal policy favoring the arbitration of labor disputes, *Gateway Coal Co. v. UMW*, 414 U.S. 368, 377, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), derives from section 203(d) of the Labor Management Relations Act of 1947, 29 U.S.C. § 173(d) (1970):

> Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement.

It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration. A determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbitration award.

In *General Drivers Local 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963), the Supreme Court considered the

enforceability of a grievance determination made by a Joint Area Cartage Committee. The union sought specific enforcement of a committee ruling, but its complaint was dismissed on the ground, *inter alia*, that the Committee's award was not an arbitration award and therefore not enforceable under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Supreme Court held that the dismissal was improper. If the Committee's award was final and binding under the collective bargaining agreement, the Court said, then the district court had jurisdiction to enforce it under section 301:

> [W]e have held that the policy of the Labor Act "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 [1960]; cf. *Retail Clerks v. Lion Dry Goods, Inc.*, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 [1962]. Thus, if the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under § 301.

372 U.S. at 519, 83 S.Ct. at 791. The First Circuit, relying on *Riss & Co.*, has held that the decision of a joint conference committee may be enforced if the collective bargaining agreement makes the decision "final and binding," notwithstanding that the agreement also provides for the arbitration of disputes. *Electrical Contractors Association v. Local 103, International Brotherhood of Electrical Workers*, 458 F.2d 590, 592 (1st Cir. 1972). See also *Haynes v. United States Pipe & Foundry Co.*, 362 F.2d 414, 417 (5th Cir. 1966).

■ In this case, both the 1971 and 1974 Agreements provide that settlements reached at any step of the grievance procedures shall be final and binding on both parties. We therefore believe that the settlement agreements at issue are as enforceable as arbitration awards. Our decision is supported not only by *General Drivers Local 89 v. Riss & Co.*, but also by the sound practical concerns of federal labor policy.

As the late Judge Freedman of this court once explained,

> The important policy considerations which favor the early settlement of labor disputes without outside interference would be frustrated if settlement agreements reached in the grievance process were refused enforcement unless incorporated in a formal arbitrator's award. For if a final and binding settlement . . were not enforceable in the federal courts the incentive would be gone for early settlement after the grievance procedure had been set in motion. The union would be required to carry its controversy to the ultimate end of the grievance process or lose the right to enforcement in the federal courts.

*Amalgamated Meat Cutters Local 195 v. M. Feder & Co.*, 234 F.Supp. 564, 567 (E.D.Pa. 1964) (Freedman, Circuit Judge, sitting by designation).

### III.

■ Our conclusion that the absence of an arbitration award does not preclude judicial enforcement of the settlement agreements is not dispositive of this case. In order to be enforceable, a settlement agreement, like an arbitration award, must not only be final and finding by the terms of the collective bargaining agreement, but it must also be sufficiently specific as to be capable of implementation. See *Electrical Contractors Association v. Local 103, International Brotherhood of Electrical Workers*, 458 F.2d 590, 592–93 (1st Cir. 1972). Courts will not enforce a settlement agreement that is vague, ambiguous, incomplete, or unclear in its meaning and effect. See *Chief Freight Lines Co. v. Local 886, International Brotherhood of Teamsters*, 514 F.2d 572, 579 (10th Cir. 1975); *Bell Aerospace Co. v. Local 516, UAW*, 500 F.2d 921, 923 (2d Cir. 1974); *San Antonio Newspaper Guild v. San Antonio Light Division*, 481 F.2d 821, 824–25 (5th Cir. 1973); *Local 369, International Brotherhood of Electrical Workers v. Olin Corp.*, 471 F.2d 468, 472 (6th Cir. 1972); *United Steelworkers v. Timken Roller Bearing Co.*, 324 F.2d 738,

740 (6th Cir. 1963).[1] We believe that the settlement agreements in this case are too uncertain in their effect to be granted enforcement.

The assurances of which the Union seeks specific performance are general in their terms. The employer, according to the Union, should be enjoined to adhere to three broad promises which the Union asserts were made in settlement of grievances: (1) that supervisors would not perform classified work; (2) that the company would comply with federal and state safety laws and regulations; and (3) that the employees with less than ninety days' underground experience would not be assigned as helpers on continuous miners and roof bolting machines. As applied to future disputes between the Union and the employer, each of these promises leaves unresolved both important questions of contract interpretation and whatever factual and credibility issues might arise.

The promise regarding supervisors doing classified work, for example, adds nothing to the contractual provision, which permits supervisors to perform bargaining unit work in emergencies or when necessary to train employees. But neither the collective bargaining agreement nor the settlement agreement defines "emergencies" or "training." Similarly, the promise regarding the use of inexperienced employees defines no better than the contract whether "ninety days" means ninety work days or ninety calendar days. And finally, the assurance of compliance with safety regulations provides no assistance in the resolution of disagreements over whether the employer did or did not take a particular action. *See United Electrical Radio & Machine Workers v. Honeywell, Inc.*, 522 F.2d 122, 127 (7th Cir. 1975). These examples of potential disputes left undetermined by the basic collective bargaining agreement and by the settlement agreements are hardly far-fetched: the record reveals that the parties have in the past debated whether a given supervisor charged with doing classified work was confronted with an emergency, whether an employee with underground experience of ninety calendar days was "inexperienced," and whether a certain safety regulation was or was not followed.

The Union believes that such factual disputes and questions of interpretation should be resolved in the future by the district court. In other words, the Union maintains that specific performance of the employer's general promises should be granted now, and that any necessary clarifications or specifications should be effected by the district court in the course of contempt proceedings. To accept the Union's contention, of course, would be to require the interposition of the district court in the unforeseeable day-to-day differences arising in the ongoing relationship at Barnes & Tucker's mines. Nothing in federal labor law or policy permits such a result.

Because collective bargaining agreements often speak in general terms and regulate a complicated relationship between many people, the grievance and arbitration machinery play an important supplemental role in the ongoing system of industrial self-government. It is "in the words of the late Dean Shulman, 'a compilation of diverse provisions: some provide objective criteria almost automatically applicable; some provide more or less specific standards which require reason and judgment in their application; and some do little more than leave problems for future consideration with an expression of hope and good faith.' Gaps may be left to be filled in by references to the practices of the particular industry . . . . Many of the specific practices which underlie the agreement may be unknown, except in hazy form, even to the negotiators." *Steel Workers v. Warrior & Gulf Navigation, infra,* 363 U.S. 574, 580, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409

---

1. *See generally Hart v. Overseas National Airways, Inc.*, 541 F.2d 386, 392 (3d Cir. 1976); *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128–29 n.27 (3d Cir. 1969); *Local 719, American Bakery & Confectionary Workers v. National Biscuit Co.*, 378 F.2d 918, 925 (3d Cir. 1967); *Kirby v. Pennsylvania Railway Co.*, 188 F.2d 793, 796–97 n.11 (3d Cir. 1951).

(1960). Unfortunately, the settlements in the instant case have not filled the gaps left open by the general contractual provisions. This may result from the impossibility of formulating objective criteria automatically applicable to each factual situation which may arise in the day-to-day operations of large coal mines. In any event, the courts hardly can be expected to exercise their authority under such circumstances.

The clarification of uncertainties in a settlement agreement is a task to be first performed according to the parties' chosen machinery for dispute resolution. Interpretation of an unclear labor agreement is simply not the function of a district court. *Hanford Atomic Metal Trades Council v. General Electric Co.*, 353 F.2d 302, 307–08 (9th Cir. 1966). If the parties have selected a method for the private settlement of labor disputes, the rationale of the *Steelworkers* trilogy [2] requires that their differences be *completely* resolved according to that method before the judiciary may intervene.[3] *Id.; San Antonio Newspaper Guild v. San Antonio Light Division*, 481 F.2d 821, 824–25 (5th Cir. 1973). Indeed, to grant enforcement of an indefinite arbitration or settlement award would, by a two-step process, subvert rather than promote the policy favoring adjustment of differences by a means agreed upon by the parties. First, an award that is incomplete or uncertain would by itself tend to generate future disputes over the scope of the award. *See Mercury Oil Refining Co. v. Oil Workers International Union*, 187 F.2d 980, 982 (10th Cir. 1951). Second, judicial enforcement of such an award would guarantee that a number of those future disputes would find their way into the courts by way of contempt proceedings. *See generally*

*Electrical Contractors Association v. Local 103, International Brotherhood of Electrical Workers*, 458 F.2d 590, 593 (1st Cir. 1972).

We therefore hold that the general promises at issue here, leaving unresolved as they do many questions of interpretation and issues of fact, lack the specificity and certainty that are prerequisites to judicial enforcement. We agree with the district court that the employer's alleged violations of promises made in settlement agreements are matters for resolution by the grievance procedure established in the collective bargaining agreements.

## IV.

The order of the district court dismissing the action will be affirmed.

SEITZ, Chief Judge, concurring.

I agree with the majority's conclusion in part II of their opinion—that the absence of an arbitration award does not preclude judicial enforcement of a settlement agreement under § 301 of the Taft-Hartley Act, 29 U.S.C. § 185. But I conclude that the district court was correct in refusing to enforce the agreements in this case for reasons other than those relied upon by the majority.

Article XXIII of the 1974 collective bargaining agreement provides that unless contractual disputes are settled, they shall be referred to arbitration. On the other hand, Article XXIII also states that: "[s]ettlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceedings under this Article except by mutual agreement,"[1] and this

---

2. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

3. "It is the arbitrator's construction which was bargained for . . .." *United Steelworkers v. Enterprise Wheel & Car Corp., supra* note 2, 363 U.S. at 599, 80 S.Ct. at 1362.

1. Article XVII of the 1971 collective bargaining contract indicates that settlement agreements reached prior to referring grievances to the "umpire" "shall be binding on both parties and shall not be subject to reopening except by mutual agreement." The 1971 and 1974 contracts contain separate procedures for resolution of health and safety grievances, but these are, for present purposes, substantially identical to the generally applicable grievance procedures.

might be thought to indicate that the settlement agreements actually reached by the parties here may be judicially enforced without further resort to arbitration.

But the terms of the settlement accords are basically coextensive with the clauses of the collective bargaining agreement under which the grievances arose. Thus, to hold that the settlement accords may be sued upon in district court without resort to arbitration would mean that essentially *all* issues arising under the basic clauses in the collective bargaining contract could be presented directly to the district court and not brought to arbitration. The settlement accords do not clearly indicate the intent to take all issues regarding the interpretation of these clauses in the collective bargaining contract out of the grievance adjustment procedure in Article XXIII, which culminates in arbitration, and to rest them directly in the hands of the federal courts. Nor is such an intent lightly to be implied in view of the federal policy favoring the arbitration of labor disputes. *See Gateway Coal Co. v. UMW*, 414 U.S. 368, 377, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974).

I need not address the question of whether prospective relief on the basis of settlement agreements is always improper when the collective bargaining agreement contains a broad arbitration clause unless the settlement agreements explicitly state that their content is not arbitrable. When the terms of settlement accords track the language of the underlying collective bargaining contract closely, as they do here, I would require a clear expression of intent before I would interpret settlement accords to allow the parties to place the content of the collective bargaining contract directly before the district courts. I say this with full realization of the fact that my position has the effect of reading this type of settlement agreement to grant no rights besides those already contained in the collective bargaining contract.

The majority refuse to enforce the settlement agreements because they are not "sufficiently specific as to be capable of implementation." But as I have noted, the terms of the settlement agreements closely track the terms of the collective bargaining agreement itself. The majority, and properly so, do not cast doubt on the proposition that the relevant clauses of the collective bargaining contracts are sufficiently specific to enforce, and I see no reason to treat the settlement agreements differently. But while I cannot join entirely in the majority's reasoning, I concur in their judgment that the district court should be affirmed.