**Robert BRENNAN**

v.

**D. J. McNICHOL CO.**

**Civ. A. No. 76–3957.**

United States District Court,
E. D. Pennsylvania.

Sept. 1, 1978.

Harry D. Shargel, Philadelphia, Pa., for plaintiff.

Jacob P. Hart, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Plaintiff Robert Brennan ("Brennan") brought this action to enforce an alleged oral agreement with a representative of defendant D. J. McNichol Company ("McNichol") providing for reinstatement of Brennan to his job as a truck driver employed by McNichol if certain conditions precedent were satisfied. The case was tried before this Court without a jury and, pursuant to Fed.R.Civ.P. 52(a), we make the following findings of fact and conclusions of law.

### FINDINGS OF FACT

McNichol, a Delaware corporation doing business in Pennsylvania, is a contract car-

rier whose sole customer is the Atlantic and Pacific Tea Company ("A&P"). Brennan was employed by McNichol as a truck driver from March 31, 1971, until July 12, 1974, the date of his discharge. On July 12, 1974, while Brennan was delivering various goods and supplies to an A&P store in Llanerch, Pennsylvania, the A&P store manager notified the Haverford Township Police Department that he had observed Brennan attempting to steal merchandise from the shipment. The police stopped Brennan while he was driving away from the Llanerch A&P and found the missing goods in the cab of his truck. Following his arrest on a charge of theft by unlawful taking, Brennan was discharged by Harold Martin ("Martin"), then Coordinator and Labor Relations Director for McNichol.

McNichol is a member of Food Employers' Labor Relations, Inc. ("FELR"), a unit of corporations, partnerships and other individual employers formed for collective bargaining purposes [Ex. D–2]. During the period of his employment with McNichol, Brennan was a member of Food Drivers, Helpers and Warehousemen Local No. 500 ("Union"). The FELR member companies entered into a collective bargaining agreement with the Union, entitled the "Master Food Agreement," which established the terms and conditions of employment for truck drivers and other union members with the FELR employers [Ex. D–2]. In the event of a grievance between the Union and an FELR employer, the Master Food Agreement, which was in effect during the period of this dispute, outlined a four-step grievance and arbitration procedure to be followed to resolve the grievance: Step 1 provided an informal, "garage-level" meeting between the Union steward and a designated representative of the employer in an effort to reach a mutually satisfactory solution to the dispute; if the grievance was unresolved at Step 1, Step 2 provided a meeting between the Union Business Agent and a designated representative of the employer; if unresolved at Step 2, Step 3 provided for a hearing before the FELR Joint Board, a panel consisting of an equal number of FELR and Union representa-

tives; and, if unresolved at Step 3, Step 4 provided for arbitration of the matter by a disinterested arbitrator. The party wishing to proceed to the next higher step beyond Step 1 was required to present the grievance within ten calendar days of the previous step meeting [Ex. D–2].

On July 16, 1974, four days after Brennan's arrest and subsequent discharge from McNichol, a Step 1 "garage-level" meeting was held in Martin's office in an effort to reach a mutually satisfactory solution to Brennan's grievance that he had been discharged. This meeting was attended by Brennan, Martin, William O'Farrell ("O'Farrell"), Vice-President and Business Agent of the Union, William Connors, a shop steward employed by McNichol, and Edward Cook ("Cook"), Operations Manager for McNichol [N.T. 1–18 to 1–19]. At the meeting, Martin and O'Farrell discussed both the possibility of allowing the outcome of Brennan's pending criminal proceedings in the Delaware County Court of Common Pleas to be dispositive of the matter of Brennan's reinstatement and the possibility of waiving the ten-day time requirements to pursue subsequent steps in the grievance procedure [N.T. 1–82 to 1–85]. At this Step 1 meeting, Martin did not agree, orally or otherwise, to reinstate Brennan with back pay if Brennan were acquitted of the criminal charge in state court, but rather told O'Farrell that McNichol would "follow the grievance machinery" regardless of the disposition of Brennan's criminal case [N.T. 1–85 to 1–86, 1–99, 2–38]. However, Martin and O'Farrell did agree at this meeting that McNichol would waive the time requirements for further utilization of the grievance procedure until the conclusion of Brennan's criminal proceedings. That is to say, Martin agreed that the company would not contest the Union's untimely use of the grievance procedure beyond Step 1 despite the ten-day time limitations set forth in the Master Food Agreement [N.T. 1–82 to 1–84, 2–39].

On July 29, 1974, Brennan appeared at the Delaware County Courthouse for a preliminary hearing concerning his criminal

case. After this hearing, Martin talked briefly with Brennan and his wife in an attempt to calm and reassure the distraught Mrs. Brennan [N.T. 1–87]. Martin did not discuss with Mrs. Brennan any previous oral agreement that would allow Brennan's reinstatement at McNichol upon his acquittal in state court [N.T. 1–87].

Nearly a year later, on June 18, 1975, Brennan was acquitted by a jury of all criminal charges against him for the alleged theft of the A&P merchandise. Shortly after the acquittal, O'Farrell telephoned Martin and requested that Brennan be reinstated at McNichol. Martin refused, and told O'Farrell that Brennan was required to utilize the grievance procedure as they had agreed at the Step 1 meeting [N.T. 1–88 to 1–89]. At the request of O'Farrell, Martin then talked to the company president, Dennis J. McNichol ("Mr. McNichol"), to inquire whether McNichol would be willing to rehire Brennan in light of Brennan's acquittal [N.T. 1–89]. After his conversation with Mr. McNichol, Martin called O'Farrell and told him that McNichol adhered to its position that Brennan would not be reinstated unless the Union followed the grievance procedure to a successful conclusion [N.T. 1–90].

O'Farrell then requested FELR Secretary Peter M. Stern to schedule an FELR Joint Board hearing, pursuant to Step 3 of the grievance procedure [O'Farrell dep., at 15]. The FELR Joint Board hearing was conducted on July 10, 1975, by a four-man panel, consisting of two Union representatives (Charles Amoroso and William Brown) and two FELR representatives (Ernest Kennedy and Jess Stewart) [Ex. D–1]. Prior to the convening of the FELR meeting, O'Farrell stated that Brennan should be reinstated without going through the grievance procedure because he had been acquitted in state court [N.T. 1–91]. Martin disagreed, again stating that Brennan's case would be heard only through the grievance machinery [N.T. 1–91]. When the FELR Joint Board hearing was convened, O'Farrell, Brennan and three other Union members presented Brennan's grievance to the panel, while Martin and Cook presented the case on behalf of McNichol [Ex. D–1]. No argument was made during the FELR Joint Board hearing that there had been an oral agreement to reinstate Brennan if he were acquitted of the criminal charges brought against him [Ex. D–1; O'Farrell dep., at 18]. The FELR Joint Board deadlocked, and Brennan's grievance was thereafter scheduled for arbitration [Ex. D–1].

After the FELR Joint Board hearing, but prior to arbitration, O'Farrell asked Mr. McNichol to reinstate Brennan, but did not mention to Mr. McNichol that Martin had made an oral agreement with O'Farrell to reinstate Brennan if he were acquitted [N.T. 2–50]. Mr. McNichol refused to rehire Brennan on the ground that the Master Food Agreement required Brennan to utilize the grievance procedure. During the subsequent Step 4 arbitration hearing in October of 1975, no argument was raised by any party with respect to the existence of the alleged oral agreement to reinstate Brennan upon his acquittal [N.T. 1–50]. On November 25, 1975, arbitrator J. Perry Horlacher rendered his award in which he sustained McNichol's discharge of Brennan and denied the grievance.

## DISCUSSION

The central issue in this dispute is whether Martin and O'Farrell made an oral agreement at the Step 1 "garage-level" meeting which made the outcome of the pending criminal proceedings in the Delaware County Court of Common Pleas dispositive with respect to the matter of Brennan's reinstatement in his job as a truck driver with McNichol. Brennan has the burden of proving, by a preponderance of the evidence, that there was an enforceable agreement which contained the specificity and certainty that are prerequisites to judicial enforcement to reinstate Brennan upon his acquittal. *See United Mine Workers of America, District No. 2 v. Barnes and Tucker Co.*, 561 F.2d 1093, 1097 (3d Cir. 1977). In this case, the credible evidence demonstrates that Martin, as a representative of McNichol, agreed only to waive the ten-day

time requirements of the grievance and arbitration procedure established in the Master Food Agreement. Neither at the Step 1 "garage-level" meeting, nor at any time thereafter, did Martin or any representative of McNichol agree to reinstate Brennan to his former position if he were acquitted of the criminal charges lodged against him. To the contrary, Martin and Mr. McNichol insisted at all times that Brennan utilize the grievance and arbitration procedure to resolve the dispute. The agreement to waive the time requirements of the grievance and arbitration procedure in no way affected the requirement that Brennan ultimately utilize such procedure in order to secure reinstatement. In the absence of an enforceable Step 1 agreement to reinstate Brennan upon his acquittal, Brennan was bound by the terms and conditions of the Master Food Agreement to utilize the established grievance procedure in his efforts to be reinstated at McNichol.

Any factual references in this discussion shall be considered as our findings of fact in addition to those set forth under "Findings of Fact," and any conclusions of law in this discussion shall be deemed our conclusions of law in addition to those set forth in the following section.

## CONCLUSIONS OF LAW

The Court has jurisdiction over the subject matter of this action pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1970). The defendant, as a member company of FELR, and the plaintiff, as a member of the Union, are bound by the terms and conditions of the existing collective bargaining agreement between FELR and the Union, entitled the Master Food Agreement. Article 8 of the Master Food Agreement delineates the "Grievance and Arbitration Procedure" to be followed involving disputes concerning the application or interpretation of the express terms of the collective bargaining agreement. Pursuant to Step 1 of the Grievance and Arbitration Procedure, the Union Steward, together with the plaintiff and the Union Business Agent, met with designated representatives of the employer, but did not reach a mutually satisfactory solution to the plaintiff's grievance. With respect to the alleged oral agreement at this Step 1 "garage-level" hearing, the plaintiff has failed to meet his burden of proving, by a preponderance of the evidence, that the Union Business Agent and a designated representative of the employer orally agreed that the defendant would reinstate the plaintiff if he were acquitted of the criminal charges then pending against him. The Step 1 agreement to waive the prescribed 10-day time limit for the plaintiff to further utilize the grievance and arbitration procedure was valid and enforceable, and thus precluded the dismissal and forfeiture of the plaintiff's grievance at Step 2 of the procedure. No satisfactory agreement or settlement was reached either at the Step 2 meeting between the Union Business Agent and a designated representative of the employer, or at the Step 3 hearing before the FELR Joint Board. The unsettled matter was submitted to Step 4 arbitration where a disinterested arbitrator rendered his final and binding decision in which he sustained the defendant's discharge of the plaintiff and denied the plaintiff's grievance.

Because the plaintiff has failed to meet his burden of proving, by a preponderance of the evidence, that representatives of the Union and the defendant orally agreed at the Step 1 hearing to reinstate the plaintiff upon his acquittal in state court, judgment shall be entered in favor of the defendant and against the plaintiff.

An appropriate Order will be entered.