**UNITED MINE WORKERS OF AMERICA DISTRICT NO. 5**

v.

**CONSOLIDATION COAL COMPANY, Appellant.**

**No. 81–1481.**

United States Court of Appeals, Third Circuit.

Argued Nov. 19, 1981.

Decided Dec. 2, 1981.

Anthony J. Polito (argued), Leonard Fornella, Corcoran, Hardesty, Ewart, Whyte & Polito, P.C., Pittsburgh, Pa., for appellant, Consolidation Coal Co.

Louis B. Kushner (argued), Sandra Reiter Kushner, Rothman, Gordon, Foreman & Groudine, P.A., Pittsburgh, Pa., for appellee, United Mine Workers of America, District No. 5.

Before GIBBONS and HIGGINBOTHAM, Circuit Judges and MEANOR,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Consolidation Coal Company (Consol) appeals from an interlocutory order of the District Court for the Western District of Pennsylvania in favor of the United Mine Workers of America, District Number 5 (the Union) in an action brought by the Union to enforce a settlement agreement between Consol and the Union. The action was brought pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. The District Court issued a preliminary injunction directing Consol to remove a sub-contractor from its Champion Preparation Plant in Imperial, Pennsylvania, to reassign the work in dispute to classified employees at the plant and enjoining Consol from future violations of a provision in the National Bituminous Coal Wage Agreement of 1978 relating to contracting out of repair and maintenance work. Because we find that the dispute between Consol and the Union was arbitrable, we reverse.

### I.

At the time this dispute arose, the parties were signatories to the National Bituminous Coal Wage Agreement of 1978 (the Contract). The Contract contains clauses which protect the work jurisdiction of the

---

* Honorable H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation.

Union[1] and prohibit contracting and subcontracting of repair and maintenance work customarily performed by classified employees as long as those employees have the necessary skills and the employer has the necessary equipment available to perform the job.[2] Article XXIII of the Contract also contains a detailed grievance-arbitration procedure which provides for the resolution of disputes by final and binding settlement.[3]

On January 16, 1981, the Union filed a grievance alleging that the Lincoln Welding Company, pursuant to a contract with Consol, was performing routine maintenance and repair work which was customarily performed by classified employees, including repair and installation work on a thermal dryer, and work on a front-end loader, a hydro-rake, and a D-9 bulldozer. This grievance was resolved in the second step of the grievance procedure by a written settlement agreement in which Consol agreed that "management will not violate Article IA, Sec. (a) and (g) of the contract."

On March 11, 1981, Consol's Superintendent at the Champion Preparation plant told the local union's Acting President that Lincoln Welding Company, a subcontractor, would be coming that evening to begin repair work on deister tables in the plant.[4] On March 12, 1981, two meetings were held between representatives of the Union and Consol. The Union's position during the

meetings was that union employees had performed some work on the deister tables in the past and wanted to do the work which Consol had hired Lincoln to perform. Consol's position was that outside contractors, including Lincoln, had previously installed deister tables at the plant, and thus Consol had a contractual right to contract out the work since it was not customarily performed by classified employees. After the meeting, Consol decided to proceed with its plan to contract out the deister table work, and the Union filed several grievances. (App. 65a, 71a). On March 13, 1981, the Union brought this Section 301 action in the district court seeking enforcement of the January 1981 settlement agreement. On March 19, Consol filed a Rule 12(b) motion to dismiss the Union's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. On March 20, 1981, a hearing on both Consol's motion and the Union's request for a preliminary injunction was held before the District Court. In an oral order, the court denied Consol's motion and found that the repair or installation of deister tables was work which had customarily been performed by the classified employees at Consol, that the classified employees had the skills necessary to repair or install deister tables and that Consol had the necessary equipment available to perform the work. (App. 197a). The court

---

1. Article IA, Section (a) provides:

   Work Jurisdiction—The production of coal . . . repair and maintenance work normally performed at the mine site or at a central shop of the Employer and maintenance of gob piles and mine roads, and work customarily related to all of the above shall be performed by classified Employees of the Employer covered by and in accordance with the terms of the Agreement. Contracting, subcontracting, leasing and subleasing, and construction work, as defined herein, will be conducted in accordance with the provisions of this Article.

   Nothing in this section will be construed to diminish the jurisdiction, express or implied, of the United Mine Workers.

2. Article IA, Section (g) provides:

   Contracting and Subcontracting

   (2) Repair and Maintenance Work—Repair and maintenance work customarily per-

formed by classified Employees at the mine or central shop shall not be contracted out except (a) where the work is being performed by a manufacturer or supplier under warranty, or (b) where the Employer does not have available equipment or regular Employees with necessary skills available to perform the work at the mine or central shop, provided, however, that the work shall be performed by UMWA members to the extent and in the manner permitted by law.

3. Article XXIII, Section (h) provides:

   Settlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceedings under this Article except by mutual agreement.

4. Deister tables are large pieces of equipment used to mechanically separate fine raw coal.

issued an injunction ordering Consol to refrain from violating the contracting and sub-contracting clause of the contract, to cease and desist from violations of the January 1981 settlement agreement, to direct Lincoln Welding Company to remove its tools, men and equipment from the Champion Preparation Plant, to award to classified employees all present and future work which involves any repairs or replacement of the deister tables customarily performed by classified employees, and to award to employees any other present and future work that is customarily done by those employees. (App. 197a–199a). This appeal by Consol followed the court's issuance of the preliminary injunction.

## II.

Consol contends that the District Court had no jurisdiction under Section 301[5] to decide the merits of a pending grievance when, according to the terms of the collective bargaining agreement, the parties had agreed to submit disputes to binding arbitration. Consol argues that the decision as to whether any particular repair or maintenance job can be contracted out depends upon the resolution of two factual issues: (1) whether the work is customarily performed by classified employees at the plant; and (2) whether Consol has the necessary equipment available, and the employees have the necessary skill to perform the job. By resolving these factual issues, Consol asserts, the district court improperly substituted itself for an arbitrator, in contradiction to the Supreme Court's mandate in the Steelworkers Trilogy that the preferred method of resolution of labor disputes is the method chosen by the parties. *United Steelworkers v. American Manufacturing*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steel-workers v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 352 (1960). The Union answers that since the collective bargaining agreement designates settlement agreements as binding and final, and since the parties had previously settled a grievance under the same contract clauses, the district court had jurisdiction under Section 301 to enforce that settlement agreement. Because of the lack of specificity in the January 1981 settlement agreement and the differences between the two grievances, we agree with the appellant's argument on this point.

Section 301 of the LMRA gives to federal courts the power to fashion a body of federal law to adjudicate suits for violations of contracts between an employee and a labor organization. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957). Although the majority of cases brought under Section 301 are actions to enforce contractual promises to arbitrate or to enforce arbitration awards already rendered, it is indisputable at this point that any means chosen by the parties for settlement of their differences under a collective bargaining agreement can be judicially enforced in federal court as long as the settlement is final and binding under the contract. *Truck Drivers Union v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). *Accord, Teamsters Local Union No. 30 v. Helms Express, Inc.*, 591 F.2d 211, 216 (3d Cir.), *cert. denied*, 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979); *United Mine Workers v. Barnes & Tucker Co.*, 561 F.2d 1093, 1096 (3d Cir. 1977); *United Steel Workers v. Pullman-Standard Car Mfg. Co.*, 241 F.2d 547, 551–52 (3d Cir. 1957); *Pittsburgh Metro Area Postal Workers Union v. United States Postal Service*, 463 F.Supp. 54, 57 (W.D.Pa.1978), *aff'd*, 609 F.2d 503 (3d Cir.), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1598, 63 L.Ed.2d 785 (1979). To be judicially enforceable, however, a settle-

---

**5.** Section 301 provides:

Suits for violation of contracts between an employer and a labor organization in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

ment agreement, like an arbitration award, must be sufficiently specific as to be capable of implementation. *United Mine Workers v. Barnes & Tucker Co., supra.* To avoid preempting the factfinding functions which the parties have contractually assigned to the grievance machinery and arbitration, courts will not attempt to enforce a settlement agreement that is too vague or ambiguous in its meaning or effect. *Id.* Accord, e.g., *Locals 2222, 2320–2327, IBEW v. New England Telephone and Telegraph Co.,* 628 F.2d 644, 647 (1st Cir. 1980); *Hart v. Overseas National Airways, Inc.,* 541 F.2d 386, 392 (3d Cir. 1976); *Bell Aerospace Co. v. Local 516, UAW,* 500 F.2d 921, 923 (2d Cir. 1974); *Electrical. Contractors Association of Greater Boston v. Local Union 103, IBEW,* 458 F.2d 590, 593 (1st Cir. 1972); *International Association of Machinists v. Crown Cork and Seal Co.,* 300 F.2d 127 (3d Cir. 1962). The January 1981 settlement agreement between Consol and the Union in its entirety simply states that management will not violate the work jurisdiction and sub-contracting clauses of the contract. Thus, as in *United Mine Workers v. Barnes & Tucker Co.,* 561 F.2d at 1098, the settlement promises made by Consol were very general in their terms and offered no guidance to the district court in resolving questions of contract interpretation or factual and credibility issues involved in this dispute over the deister table work. The settlement agreement merely reiterates Consol's promise from the 1978 contract not to contract out repair and maintenance "customarily performed by classified employees" as long as the necessary equipment is available and the employees have the skill to do the work. Neither the contract nor the settlement agreement defines these terms or outlines what work is, in fact, customarily performed by bargaining unit employees, and it is precisely the application of these terms which gave rise to this

dispute. Consol and the Union offered contradictory evidence as to whether deister table work was customarily done by bargaining unit employees, and the District Court resolved these factual issues in favor of the Union.[6]

The parties do not dispute that neither the January 1981 settlement agreement nor the grievance which led to it specifically related to repair or maintenance work on deister tables. The Union urges, however, that since the agreement was prospective and "broad-based," it should not be limited to a certain type of work or to a particular contractor, but instead covers any dispute arising under the sub-contracting clause of the contract. The Union's position on this issue amounts to little more than wishful thinking. It is true that the January 1981 agreement is broadly worded and its language suggests prospective application, but there is contradictory evidence as to whether the ambiguous agreement was meant to apply to the current dispute. As the Supreme Court noted in *General Drivers Local 89 v. Riss & Co.:*

> [T]he policy of the Labor Act "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." [citations omitted]. Thus, if the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under § 301.

372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963). The Union has not met its burden of showing that the parties intended the settlement agreement to be their "chosen instrument for the definitive settlement" of the dispute in this case. *See United Mine Workers v. Barnes & Tucker Co.,* 561 F.2d at 1100 (Seitz, J., concurring) (clear expression of intent required

**6.** Consol's Superintendent at the Champion plant testified that during the summer of 1980, the same sub-contractor performed replacement work on the deister tables. (App. 97a–99a). The local union's Acting President testified that union employees had in the past completely renewed deister tables and replaced all

their parts. (App. 37a, 38a, 41a). The District Court made a finding of fact that "the work involving these deister tables, in all regards, is regular and customary work of the regular employees of the defendant company." (App. 184a–185a).

before settlement agreements can be interpreted to allow parties to place issues arising under basic clauses in collective bargaining agreement before the district court). The Union here urges upon the federal courts the same interpretive role in labor disputes which we previously have declined to accept. *Local 103, International Union of Electrical Radio and Machine Workers v. RCA Corp.*, 516 F.2d 1336 (3d Cir. 1975). Federal courts are bound to exercise the utmost restraint to avoid intruding on the bargained-for method of dispute resolution and when enforcement of an arbitration award or settlement agreement is sought under Section 301, the court must be able to say "with positive assurance" that the award or settlement was intended to cover the dispute.[7] If the court has any doubt, the parties should be returned to their grievance procedure and arbitration, for it is an arbitrator, and not the court, who is to decide whether the same issue has already been resolved in an earlier proceeding. *Shaffer v. Mitchell Transport, Inc.*, 635 F.2d 261, 265 (3d Cir. 1980); *Local 103, International Union of Electrical, Radio & Machine Workers v. RCA Corp., supra; T.L.I., Inc. v. General Teamsters Local Union No. 261*, 515 F.Supp. 27 (W.D.Pa.1981); *United Steelworkers of America v. Latrobe Steel Co.*, 465 F.Supp.

743 (W.D.Pa.1979); *Pittsburgh Metro Area Postal Workers Union v. United States Postal Service*, 463 F.Supp. 54, 58 (W.D.Pa. 1978). Accord, e.g., *Hart v. Overseas National Airways, Inc.*, 541 F.2d 386, 392 (3d Cir. 1976); *Bell Aerospace Co. Division of Textron v. Local 516, UAW*, 500 F.2d 921, 923 (2d Cir. 1974) (Court should not interpret ambiguous arbitration award but should remand to arbitrator for clarification). Cf. *Locals 2222, 2320–2327, IBEW v. New England Telephone & Telegraph Co.*, 628 F.2d 644, 648 (1st Cir. 1980); *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Division*, 481 F.2d 821, 825 (5th Cir. 1973); *Transport Workers Union Local 234 v. Philadelphia Transportation Co.*, 228 F.Supp. 423 (E.D.Pa.1964) (where arbitration award generates collateral dispute concerning meaning of its terms, court should direct parties to resubmit to arbitration).

The Union expresses the concern that unless this court enforces the settlement agreement, the Union will be continually forced to invoke a time consuming and expensive arbitration process, which will render the grievance mechanism a "hollow formality." We disagree. As this court stated in *Local 103, International Union of Electrical, Radio and Machine Workers v. RCA Corp.*:

---

**7.** The Union relies heavily on a recent Fifth Circuit case, *Oil, Chemical and Atomic Workers Local 4–16000 v. Ethyl Corp.*, 644 F.2d 1044 (5th Cir. 1981), which held that a party seeking enforcement of an arbitration award did not have to show a strict factual identity between the facts upon which the award was based and the facts relied on to show non-compliance, but only had to show substantially similar conduct. Since it is not within the court's prerogative to conduct a full scale examination of the collective bargaining agreement, and a court cannot adequately assess whether conduct constitutes a like violation of the collective bargaining agreement without analyzing the agreement itself, the Fifth Circuit elaborated its standard:

If, based on the evidence at trial, it is not even arguable that the current facts fall outside the prohibition or within an exemption of the article in question, then a court can safely conclude that the defendant's conduct does not differ materially from the previously condemned actions and thus, that the defendant is committing a "like" violation of the

bargaining agreement, *in violation of the prior arbitration award.* However, if the evidence indicates that a defendant has an arguable position in claiming that the current action does not violate the article in question—that the current conduct is materially different from the previously condemned conduct—then the defendant is not clearly sidestepping the prior arbitration award. In such a case, the question whether the disputed conduct actually violates the collective bargaining agreement (although a court has found it is at least arguable that it does not) should then be deferred to an arbitrator. *Id.* at 1051. Under the test as articulated by the Fifth Circuit, we would reach the same result in this case. The plaintiff would bear the burden of showing that the defendant's current conduct is not even arguably permissible under the relevant portion of the Contract, and does not even arguably differ in a material way from Consol's previous conduct. The plaintiff in this case did not meet that burden.

Open to the union, before the arbitrator, is the same contention it has presented to the courts, *i.e.*, that the "same question or issue" was previously "the subject of arbitration." So viewed, finality, consistent with the provisions of the agreement, will be preserved.

516 F.2d at 1341.

■ Because we conclude that the dispute was arbitrable the District Court should not have resolved it.

### III.

■ Appellants also contend that, assuming some injunctive relief was proper, the injunction issued by the District Court in this case was overbroad and vague, in violation of Section 9 of the Norris-LaGuardia Act, 29 U.S.C. § 109,[8] and Fed.R.Civ.P. 65(d). We agree. Although the court can enjoin a chronic pattern of ongoing activity in violation of a contract, in *United States Steel Corp. v. United Mine Workers of America*, 534 F.2d 1063, 1077 (3d Cir. 1976), we cautioned against issuance of overbroad injunctive relief:

Prospective injunctive relief should go as far as, but no farther than, the pattern of violations suggests is necessary. Before prospective injunctive relief is ordered the district court must, we think, make specific findings based on evidence in the record as to the types of violations which have occurred in the past and limit injunctive relief to the likelihood of their recurrence, or to new and different kinds of violations which may be expected to occur in the future. The court must, moreover, relate the likelihood of recurrence or occurrence to some act, omission or responsibility of each defendant against whom such injunctive relief is ordered.

■ In addition, Rule 65(d) requires that every injunction be specific in terms and describe in reasonable detail the acts sought to be restrained. *See Developments in the Law-Injunctions*, 78 Harv.L.Rev. 994, 1064–66 (1965). In *United States Steel, supra*, we required that any prospective injunctive decree instruct the party against whom it has been issued what specific steps it must take to prevent recurrences and we warned against the dangers of an overly vague injunction:

A blanket injunction in the language of the arbitration clause places in the hands of the successful § 301 plaintiff a weapon by which harassment by contempt citations may take the place of the normal ongoing collective bargaining process. No § 301 defendant should be subjected to that risk.

534 F.2d at 1078. *Accord, Pittsburgh-Des Moines Steel v. United Steelworkers*, 633 F.2d 302 (3d Cir. 1980); *Bituminous Coal Operators Ass'n, Inc. v. United Mine Workers of America*, 585 F.2d 586, 599 (3d Cir. 1978). The language of the district court in the injunction at issue for the most part merely repeats the language of the collective bargaining agreement,[9] and admon-

---

8. Section 9 provides:

[E]very restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case as shall be expressly included in said findings of fact made and filed by the court as provided in this section.

29 U.S.C. § 109.

9. In addition to ordering Consol to award all present and future deister table work to the Union, the District Court's oral order enjoined Consol:

... from presently violating the terms of the agreement, namely, Article I–A, Section G, subsection 2 ...

... to refrain from a continuation of their bad faith activities, and ... to adhere to the agreement which stemmed out of an arbitration proceeding dated January 26, 1981 ...

... to cease and desist from any further violations of the agreement made on January 26, 1981 and to cease and desist from any continued wilful bad-faith violations of Article I–A, Section G, subsection 2 ...

... to award all present work and all future work that is customarily done by the employees who are, in this action, acting through their local union and also through District 5, United Mine Workers of America. That all this work, which has been customar-

ishes Consol to obey the settlement and not to behave in bad faith. The injunction thus effectively removes to contempt proceedings any grievance involving the subcontracting clause and, as drawn, is violative of both Section 9 of the Norris-LaGuardia Act and Fed.R.Civ.P. 65(d). Thus even if the dispute were not arbitrable the injunction appealed from could not be affirmed.

## IV.

The order appealed from will be reversed and the case remanded for proceedings consistent with this opinion.

ily done by them in the past, shall be awarded to them in the future, if they are able and available to do the work, and who are in good standing with Local 6754 of District 5, United Mine Workers of America, and in

cases, of course, where there is sufficient equipment on the premises to accomplish the work in question.
(App.197a–199a).