594 F.2d 988
 100 L.R.R.M. (BNA) 3211, 85 Lab.Cas. P 11,208
 NATIONAL POST OFFICE MAIL HANDLERS LOCAL NO. 305, LIUNA,
AFL-CIO, Appellants,
v.
UNITED STATES POSTAL SERVICE, B. N. Conyers, Sectional
Center Postmaster, Rocky Mount, North Carolina, F. T.
Southerland, Sectional Center Director/Employment & Labor
Relations, L. R. Bullock, Sectional Center Director/Mail
Processing, Appellees.
 No. 78-1192.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 11, 1979.
Decided March 30, 1979.
 
 Deborah G. Mailman, Raleigh, N.C. (Deborah Mailman and Sharon Thompson, Raleigh, N.C., on brief), for appellants.
 Thomas H. Pigford, Senior Asst. Regional Labor Counsel, U. S. Postal Service, Memphis, Tenn. (George M. Anderson, U. S. Atty., and Bruce H. Johnson, Asst. U. S. Atty., Raleigh, N.C., on brief), for appellees.
 Before WINTER and BUTZNER, Circuit Judges, and FIELD, Senior Circuit Judge.
 WINTER, Circuit Judge:
 
 
 1
 Plaintiff, National Post Office Handlers Local No. 305, Laborers' International Union of North America, AFL-CIO (hereafter "local union"), sued the United States Postal Service (Postal Service) and others[1] to enforce a number of grievance settlements reached with the Postal Service Sectional Center at Rocky Mount, North Carolina, and to recovery compensatory and punitive damages for the Service's failure to implement the settlements. The district court dismissed the complaint on the grounds that the local union lacked standing to sue and that it had failed to exhaust its contractual remedies. Because we are advised that if it has not already alleged standing the local union is able to allege and prove that the suit was authorized by the national union, and because we think that under the facts alleged further exhaustion of contractual remedies should not be required, we reverse and remand for further proceedings.
 
 I.
 
 2
 The complaint and its attachments disclose these facts: The local union is chartered by National Post Office Mail Handlers, Watchmen, Messengers and Group Leaders Division of the Laborers' International Union of North America, AFL-CIO (hereafter "national union"). The national union together with three other labor organizations, and the Postal Service entered into a collective bargaining agreement governing hours, wages and working conditions of Postal Service employees. Inter alia, this agreement established a multi-step procedure culminating in arbitration for the resolution of employee grievances.[2] Only when the decision is adverse to the union at any given step in the grievance procedure may the grievance be appealed to the next highest level, including arbitration.
 
 
 3
 The agreement between the national union and the Postal Service also authorizes local memoranda of understanding to implement the national collective bargaining agreement with respect to certain aspects of working conditions, vacations, leave and the like. Of course, the national collective bargaining agreement provides that local memoranda may not conflict with it, and it further provides that grievances arising from an alleged violation of a local memorandum of understanding shall be resolved by the grievance procedure established in the national contract. The local union executed a local memorandum of understanding with the Postal Service Sectional Center at Rocky Mount, North Carolina.
 
 
 4
 The local union alleges that it has appeared in forty-five separate grievances involving the work assignments of certain employees, the filling of a vacancy, the discharge or demotion of certain employees, and the harassment of union representatives, and all resulted in favorable decisions short of arbitration.[3] Additionally, it has appeared in seven class-action grievances brought because of defendants' failure to comply with the settlements in earlier cases. In each of these, it was also successful without resort to arbitration.[4] Indeed, in the latest class-action complaint, the resolution was:
 
 
 5
 Provisions of the National Agreement; Local Memorandum of Understanding between the U. S. Postal Service, Rocky Mount, NC and Mailhandler Local 305, Rocky Mount, NC; and grievance appeal decisions will be complied with by both parties of this resolution. Whenever violations, interpretations or misunderstandings arise, both parties will exercise formal and informal procedures to correct said problems promptly.
 
 
 6
 It is further understood that this (is the) final disposition of the grievance, and it is not subject to further appeal.[5]
 
 
 7
 The local union alleges that, notwithstanding its success in all of the grievances that it has presented, defendants have failed to implement these and other grievance decisions. The local union charges that defendants' failure to implement grievance decisions has been wanton, willful, malicious and in bad faith. The suit that it filed seeks a declaratory judgment that defendants are obligated to implement grievance decisions which are resolved before arbitration, an order directing defendants to implement such grievance decisions and an award of compensatory and punitive damages. The district court dismissed the action without opinion, but its order recited that the complaint was dismissed on both plaintiff's "lack of standing . . . to sue" and "failure to exhaust its arbitration remedies under the collective bargaining agreement."
 
 II.
 
 8
 The succinctness of the district court's ruling on standing makes it impossible to determine accurately the basis for its decision. The parties seem to believe that the case was dismissed, in part, because plaintiff lacked standing under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). That Act, however, does not apply because by its terms the United States or any wholly owned government corporation is not an "employer" to whom the Act extends. See 29 U.S.C. § 152(2).[6] Nonetheless, decisions under that Act are pertinent in determining how this case should be decided because the Postal Reorganization Act of 1970, 39 U.S.C. § 1208(b), tracks the language of § 301(a) of the Labor Management Relations Act. See National Association of Letter Carriers v. Sombrotto, 449 F.2d 915, 918 (2 Cir. 1971).
 
 
 9
 The local union claims that the language of the national collective bargaining agreement and the local memorandum of understanding evidences an agency relationship with the national union which gives it standing to sue under either of the agreements. Defendants assert, on the other hand, that in order to establish standing the local union must show express authorization from the national union to bring this suit. We were told in oral argument that the local union, if given the right to amend, will allege and be prepared to prove that this suit is filed with the authority and consent of the national union and that in this respect the local union is the agent of its parent. We think it unnecessary to decide on the present record whether standing on the part of the local union has been alleged. The amendment to allege standing explicitly should be permitted and on remand the district court shall grant leave to amend. Rule 15(a), F.R.Civ.P.
 
 III.
 
 10
 It is a well-established principle of labor law that a union and its members must exhaust the remedies provided in their collective bargaining agreement with the employer before they seek judicial intervention. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The requirement of exhaustion of contractual remedies is not, however, inflexible. An employee and the union acting in his behalf need only "Attempt " to use the remedy provided by contract. Republic Steel Corp. v. Maddox, 379 U.S. at 652, 85 S.Ct. 614. Where contractual remedies are unsatisfactory or unworkable by reason of misconduct of the employer or of the union, exhaustion of those remedies is unnecessary. Vaca v. Sipes, 386 U.S. 171, 185-86, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).
 
 
 11
 We think that on the allegations of the instant case further exhaustion of contractual remedies is not required. The local union alleges that it employed the grievance procedures specified in the contract and prevailed, and it then employed the grievance procedures by reason of defendant's failure to implement the prior resolutions and again prevailed. But, notwithstanding, defendants have still failed and refused to implement the resolutions. It is, of course, true that the collective bargaining agreement does not specify that the favorable resolution of a grievance short of arbitration is final and binding, but neither the national union nor the local union has a right to go to binding arbitration when it has prevailed at a grievance step prior to arbitration. Under the circumstances presented here, if the Postal Service remains adamant in its refusal to implement grievance settlements, aggrieved employees or the union acting in their behalf would be subjected to an endless, fruitless succession of grievance complaints and never realize the benefits of an award. Further exhaustion manifestly would be ineffective.
 
 IV.
 
 12
 We do not think that Pittsburgh Metro Area Postal Workers Union, AFL-CIO v. United States Postal Service, 463 F.Supp. 54 (W.D.Pa.1978) (unpublished), on which the Postal Service relies, requires a different conclusion on either of the points we consider or decide. In that case, a local union sued to enforce a settlement reached prior to arbitration with respect to the distribution of secondary mail. It was contended that a settlement providing that "(t)he amount of mail sent to the stations and branches must be predicated on their capabilities to work this mail without jeopardizing any overtime opportunities for mail processing clerks" was breached when the Postal Service announced a decision to transfer secondary distribution of Irregular Parcel Post and of First Class Small Parcels and Rolls to certain stations and branches in the Pittsburgh metropolitan area. The district court dismissed the complaint, holding that the plaintiff, a local postal union, absent the permission of the national organization, lacked standing to sue, and that fatally it had failed to exhaust the grievance procedures in the collective bargaining agreement.
 
 
 13
 To the extent that Pittsburgh Metro held that the plaintiff lacked standing to sue, it is inapplicable here, because in the instant case counsel represents that she can allege and prove that the suit was brought with the permission of the national union.
 
 
 14
 To the extent that Pittsburgh Metro held that plaintiff must exhaust contractual grievance procedures before seeking judicial intervention, it is distinguishable from the instant case. In Pittsburgh Metro, plaintiff's allegations showed that there was present in the case a substantial question as to whether the action of the Postal Service was a breach of the prior settlement. It was not alleged that that question had ever been submitted to the grievance procedure established by contract.[7] Thus there was every reason to remit the parties to their contractual remedies. See United Steelworkers v. American Manufacturing Co., 363 U.S. at 568, 80 S.Ct. at 1346. ("(C)ourts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.")
 
 
 15
 By contrast, in the instant case, the allegations are that the Postal Service has failed to implement numerous grievance settlements. The theory upon which non-implementation is alleged is not disclosed so there does not appear, at this stage of the proceedings, any question of implementation which is an appropriate inquiry for the contractual grievance process. Moreover, it is alleged that the question of non-implementation has been made the subject of subsequent grievances, one of which, at least, has been decided favorably to the plaintiff. Of course, if it should appear later in the proceedings after remand that there are factual disputes about whether any grievance settlements have been violated, it will be time enough then to invoke the exhaustion doctrine and remit the parties to their contractual remedies.
 
 
 16
 REVERSED AND REMANDED.
 
 
 
 [1]
 Joined as additional defendants were B. N. Conyers, Sectional Center Postmaster, Rocky Mount, North Carolina; F. T. Southerland, Sectional Center Director of Employee and Labor Relations, and L. R. Bullock, Sectional Center Director of Mail Processing
 
 
 [2]
 The several steps of the grievance procedure are as follows: At Step 1, an employee must discuss the grievance with his immediate supervisor and he may be accompanied by a union steward if the employee so desires. If the employee is dissatisfied with the resolution of his grievance in Step 1, the union can appeal to Step 2. A union may initiate Step 1 individual or class grievances. At Step 2A, an employee is represented by a union steward and the employer's representative must be the postal installation head or his designee. Absent satisfactory resolution at Step 2A, disciplinary grievances go to Step 2B and, if not resolved at Step 2B, directly to arbitration. If a Step 2A non-disciplinary grievance is not resolved satisfactorily, the union can appeal to Step 3. A non-disciplinary grievance, if not resolved at Step 3, can be appealed to Step 4, the so-called "national level," and if resolution is not forthcoming at Step 4, the union can appeal the question to final binding third-party arbitration. With respect to non-disciplinary grievances, either the union or the employer can bypass Steps 3 or 4, or both, and refer the question from Step 2A to arbitration. Only with respect to arbitration does the collective bargaining agreement provide that the "arbitrator's determination shall be final and binding."
 
 
 [3]
 An affidavit submitted by defendant Southerland asserts that one of these grievances was denied. In reviewing the grant of a motion to dismiss, however, we must accept as true facts well pleaded in the complaint
 
 
 [4]
 The Southerland affidavit indicates that all but one of these grievances were denied. Again, for purposes of this appeal, we accept the facts as they appear in the complaint
 
 
 [5]
 Southerland's affidavit suggests that this resolution was not accepted by the local union, which chose instead to appeal the grievance to the next step. Proof of a second resolution arising out of the appeal is said by defendants to be in attachments to Southerland's affidavit and to another affidavit submitted with plaintiff's memorandum in opposition to the motion to dismiss. Neither attachment is part of the record on appeal. In any event, for the reason stated in nn. 3 & 4 Supra, we do not enter into this factual dispute
 
 
 [6]
 The complaint alleges jurisdiction under the Postal Reorganization Act of 1970, 39 U.S.C. § 409(a), as well as under the Labor Management Relations Act. Thus the district court had jurisdiction even if the latter did not apply
 
 
 [7]
 The absence of a similar allegation in American Postal Workers Union, AFL-CIO, San Antonio Local v. United States Postal Service, No. SA-78-CA-115 (W.D.Tex.1978) (unpublished), serves to distinguish it also from the instant case