Donald L. BOTTOMS

v.

UNITED STATES POSTAL
SERVICE, et al.

Civ. A. No. 88–33–B.

United States District Court,
M.D. Louisiana.

Sept. 12, 1990.

Donald S. Wingerter, Dan M. Scheuermann, Baton Rouge, La., for plaintiff.

Frank M. Repass, III, Trial Atty., Fine, Fine, Dieth & Repass, New Orleans, La., for defendant Nat. Post Office Mail Handlers, Watchmen, Messengers & Group Leaders, Div. of Laborers Intern. Union, Local 312.

John Gaupp, U.S. Atty., Baton Rouge, C.B. Weiser, Memphis, Tenn., for defendant U.S. Postal Service.

---

1. *See* Complaint, Paragraph 16, at 4.

RULING ON MOTION TO DISMISS OR, ALTERNATIVELY FOR SUMMARY JUDGMENT BY UNITED STATES POSTAL SERVICE AND MOTION FOR SUMMARY JUDGMENT BY DEFENDANT NATIONAL POST OFFICE MAIL HANDLERS, WATCHMEN, MESSENGERS AND GROUP LEADERS DIVISION OF THE LABORERS' INTERNATIONAL UNION, LOCAL 312

POLOZOLA, District Judge.

### I.  Background

Donald L. Bottoms was employed as a mailhandler with the United States Postal Service ("USPS") in Baton Rouge, Louisiana on November 24, 1984.  On April 20, 1985, Bottoms sustained a lumbar strain in an on-the-job injury.  Bottoms received compensation through the Office of Workers Compensation Programs under the Federal Employees' Compensation Act.  As a result of the injury, Bottoms was forced to take sick leave.  Upon his return, Bottoms was assigned to light duty until he was released for full duty effective February 25, 1986.  In February of 1987, Bottoms was injured in an automobile accident which allegedly aggravated his pre-existing injury.  On the advice of a physician designated by the USPS, Bottoms sought a transfer to light duty assignments.  However, his transfer request was refused by the USPS.  Bottoms alleges that the failure of the USPS to reassign him to light duty work is a violation of Article 13 of the collective bargaining agreement ("Agreement") entered into between the USPS and the National Post Office Mail Handlers, Watchmen, Messengers and Group Leaders Division of the Laborers' International Union, Local 312 (the "Union").[1]  At this time, Bottoms hired an attorney to assist him in obtaining a reassignment with the USPS, but his attorney was unsuccessful.  Bottoms did not file any grievance pursuant to the procedures provided in the Agreement at this time.  On August 3, 1987, Bottoms received a notice of removal from employ-

ment with the USPS because of his continued unavailability for work. This notice advised Bottoms of his right to file a grievance pursuant to the procedures set forth in the Agreement.

Bottoms then sought to initiate the filing of his grievance with the Union through his attorney, Donald S. Wingerter. Wingerter contacted Herbert Simms, Jr., a Union representative. Simms advised Wingerter that the Union would not cooperate with Wingerter as Bottoms' attorney, but the Union would cooperate with Bottoms in person concerning his grievance. Wingerter relayed this information to Bottoms but Bottoms never contacted the Union concerning his removal.[2]

Although Bottoms never personally contacted the Union, a Union representative filed a grievance on Bottom's behalf at Step 1 of the grievance procedure on August 19, 1987. The USPS denied the grievance on the same day. An appeal of this Step 1 denial was filed at Step 2 of the grievance procedure which the USPS again denied. The USPS held that the removal was for just cause in light of Bottoms' "failure to meet acceptable attendance requirements"[3] and his failure to respond to requests for documentation providing "satisfactory evidence of continued incapacity for work."[4] Bottom's grievance was not appealed by the Union representative to either the Step 3 or the Step 4 grievance procedure.

Bottoms has now filed this suit against the USPS and the Union claiming negligent and willful misrepresentation under Louisiana Civil Code article 2315[5] and intentional infliction of emotional distress.[6] In addition, Bottoms alleges that the USPS intentionally breached both Article 13 of the Agreement concerning the refusal to reassign him to light duty work[7] and Article 16 of the Agreement for discharging him without cause.[8] In his suit against the Union, Bottoms also alleges breach of the duty of fair representation owed to Bottoms "by arbitrarily, capriciously, in bad faith and/or invidiously discriminating against the plaintiff in failing to process plaintiff's grievance further through their grievance procedure, including final and binding arbitration if necessary."[9]

The USPS has filed a Motion to Dismiss with Prejudice or, Alternatively, for Summary Judgment. The USPS' motion is based on the following grounds: (1) the Court lacks subject matter jurisdiction over these claims; (2) the plaintiff failed to exhaust administrative remedies; (3) the plaintiff failed to timely file the claim based on the breach of Article 13 of the Agreement; (4) a breach of Article 13 or Article 16 cannot be established; and (5) there was no breach of the Union's duty of fair representation. The Court will consider the motion to dismiss as a motion for summary judgment since the USPS filed evidence with its motion which was considered by the Court. The Union has also filed a motion for summary judgment claiming that it is the exclusive representative in the grievance process and that Bottoms has not presented any evidence to support his allegation that the Union's conduct regarding Bottoms grievance was arbitrary, discriminatory, or in bad faith.

In response to these motions, Bottoms contends that the Court does have subject matter jurisdiction under 29 U.S.C. § 185(a). Bottoms asserts that a genuine issue of material fact exists on the issue of whether the Union's conduct was in bad faith since the Union processed a grievance

---

**2.** *See* Union's List of Material Facts as to Which There is No Genuine Issue to Be Tried. Under ULLR 2.10M, facts set forth in the movant's statement of facts not in dispute that are not specifically denied by the opponent are deemed admitted.

**3.** *See* the September 25, 1987 letter to Herbert Simms from Doris Kent regarding denial of Step 2 grievance.

**4.** *Id.* (quoting Part 513.363 of the Employee and Labor Relations Manual).

**5.** Complaint, Count IV, at 6.

**6.** *Id.,* Count VI.

**7.** *Id.,* Count I at 5.

**8.** *Id.,* Count II.

**9.** *Id.,* Count III, at 6.

claim without giving Bottoms or his attorney notice of any hearings or rulings. Bottoms also contends the failure to exhaust administrative remedies is excusable since Bottoms did not have any notice of the administrative action regarding his grievance. In addition, Bottoms claims that documentation of his injury and his continued incapacity to work consisting of reports from his psychiatrist and orthopedist were forwarded to the USPS in June and July of 1987, respectively. Furthermore, Bottoms claims he was not given a letter of warning explaining the misconduct to be corrected as required in Article 16, § 16.3 of the Agreement before he received the notice of removal.

II. USPS's Motion to Dismiss or, in the Alternative, for Summary Judgement

### A. *Jurisdiction*

■ Bottoms relies on 29 U.S.C. §§ 159(a) and 185(a), the Labor Management Act of 1947, as the basis for subject matter jurisdiction in this case.[10] However, the USPS argues that subject matter jurisdiction arises exclusively under 39 U.S.C. § 1208(b). The Court finds that jurisdiction is present under either 29 U.S.C. § 185(a) or 39 U.S.C. § 1208(b). Numerous courts have held that these two statutes are substantially similar and the case law under them can be applied interchangeably.[11] There is nothing to indicate that the provisions of 39 U.S.C. § 1208(b) were intended to be the *exclusive* basis for jurisdiction. In fact, the exact opposite conclusion is suggested by 39 U.S.C. § 1209, which states:

> Employee-management relations shall, to the extent not inconsistent with provisions of this title, be subject to the provi-

sions of subchapter II of chapter 7 of title 29 [which includes 29 U.S.C. § 185(a)].

Certainly, two statutes which the courts have consistently ruled are so substantially similar that case law interpreting them can be used interchangeably are "not inconsistent with the provisions of this title". Id. The Court finds that the Court does have jurisdiction under 29 U.S.C. § 185(a).[12]

### B. *Exhaustion of Administrative Remedies*

The USPS has asserted that Bottoms did not exhaust his administrative remedies. It is clear that an employee must exhaust the grievance-arbitration procedures provided in a collective bargaining agreement before suit can be brought in federal court.[13] In this case, Article 15 of the Agreement contains the Grievance–Arbitration Procedure.[14] The procedure provides for a four-step process involving hearings between the Union and the USPS. Arbitration is available as a final administrative remedy. Under the Grievance–Arbitration Procedure, an "employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause." In addition, the Union "may initiate a grievance within 14 days of the date the Union first became aware of (or reasonably should have become aware of) the facts giving rise to the grievance."[15] The failure of the employee or the Union to comply with the prescribed time limits constitutes a waiver of the grievance.[16]

---

**10.** *Id.,* Paragraph 1, at 1.

**11.** *See McNair v. United States Postal Service,* 768 F.2d 730 (5th Cir.1985); *Abernathy v. United States Postal Service,* 740 F.2d 612 (8th Cir. 1984).

**12.** *See also D'Andrea v. American Postal Workers Union,* 700 F.2d 335 (6th Cir.1983).

**13.** *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17

L.Ed.2d 842 (1967); *Merk v. Jewel Companies, Inc.,* 848 F.2d 761 (7th Cir.1988), cert. denied, 488 U.S. 956, 109 S.Ct. 393, 102 L.Ed.2d 382 (1988); *Roman v. United States Postal Service,* 821 F.2d 382 (7th Cir.1987); *LIUNA, AFL–CIO v. United States Postal Service,* 594 F.2d 988 (4th Cir.1979).

**14.** Agreement, Article 15, at 66–79.

**15.** *Id.,* Section 15.2 (Step 1)(a), at 66–67.

**16.** *Id.,* Section 15.3(B), at 71.

■ Bottoms contends that the USPS's refusal to reassign him to a light duty job after his automobile accident is a breach of Article 13 of the Agreement. However, it is clear that neither Bottoms nor the Union initiated any grievance procedures regarding this claim. Although Bottoms' attorney contacted the USPS regarding this matter, this action was insufficient to initiate a grievance. The Agreement provides that "the Union is the exclusive bargaining representative of all employees in the bargaining unit" [17] and that an employee "may be accompanied and represented by the employee's steward or a Union representative" in this initial meeting if he desires.[18] There is no evidence appears in the record to indicate that Bottoms or the Union ever began a grievance proceeding or exhausted the available administrative remedies. Moreover, the time limits began to run from the date Bottoms or the Union knew or should have known of the grievance, making it impossible for the administrative proceedings to be exhausted.

■ Bottoms also claims that his employment was terminated without just cause in breach of Article 16 of the Agreement. A Union representative presented this grievance in Step 1 and Step 2 and the USPS denied the grievance each time. No appeal of the Step 2 denial was taken to Step 3 by the Union representative. Although plaintiff's opposition brief does not specifically address this issue, Bottoms presumably objects to the application of the exhaustion of administrative remedies doctrine since he was not notified of the grievance proceeding initiated by the Union. Bottoms asserts that he first learned of the grievance proceedings initiated on his behalf during discovery in this litigation. He was not present at either the Step 1 or the Step 2 hearings and he received no notice from either the USPS or the Union that a grievance was even pending on his behalf, much less the results from such grievance procedures. Apparently, the Union representative relied on the information obtained from the conversation with Wingerter and Bottoms did not directly participate in the grievance proceedings in any way.

However, plaintiff's argument fails in regard to his claims against the USPS. The Agreement states that the Union may initiate a grievance, "the participation of an individual grievant is not required," [19] and the representative has full authority to settle or withdraw the grievance.[20] An appeal to Step 3 of the grievance procedure "must be made within fifteen (15) days after receipt of the Employer's decision" [21] concerning Step 2 and the representative's failure to timely make such an appeal results in the waiver of Bottoms' grievance.[22] Because of the Union representative's waiver, Bottoms no longer has a right to exhaust the administrative remedies against the USPS. Based on these provisions of the Agreement and the fact that Bottoms' grievance was initiated by the Union representative, the USPS had no duty to give notice of his pending grievance or its results to Bottoms. Furthermore, the Notice of Removal expressly stated that the grievance procedures are available and Wingerter informed Bottoms that the Union would only cooperate with him personally. Thus, it is clear that Bottoms had notice and the opportunity to participate in the grievance process but neglected to do so.

■ Bottoms also alleges negligent and willful misrepresentations and intentional infliction of emotional distress by the USPS. These claims arise out of the factual circumstances surrounding the two claims discussed above. These claims are also susceptible of inclusion within the definition of "grievance" under the Agreement.[23] Since no grievance concerning

**17.** *Id.*, Article 1, Section 1.1, at 1.

**18.** *Id.*, Article 15, Section 15.2 (Step 1)(a), at 66–67.

**19.** *Id.*, Section 15.2 (Step 1)(a), at 67.

**20.** *Id. See also* Section 15.2 (Step 2)(c), at 68 and Section 15.2 (Step 3)(b), at 69.

**21.** *Id.*, Section 15.2(h), at 69.

**22.** *Id.*, Section 15.3(B), at 71.

**23.** The Agreement states:
A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours and conditions of

these allegations has been brought by Bottoms, the administrative remedies have not been exhausted. Even if the Agreement is not applicable under the facts of this case, these claims are in the nature of a tort and can only be asserted against the USPS, an agency of the United States, under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680. The jurisdictional basis of the FTCA is 28 U.S.C. § 1346(b). Furthermore, the United States must be named as the proper party defendant, not the USPS.[24]

In summary, Bottoms has failed to exhaust the administrative remedies available under the Agreement. Therefore, all of Bottoms' claims against the USPS are dismissed with prejudice.

### III. The Union's Motion for Summary Judgment

■ Bottoms claims that the Union has breached its duty of fair representation and that the Union negligently or willfully made representations to him. Bottoms argues that the Union failed to cooperate with his attorney with the filing of a grievance. However, the Agreement is clear that the Union is the exclusive bargaining unit for employee grievances against the USPS.[25] The Union had the right under the Agreement to refuse cooperation with Bottoms' attorney and require that its dealings with Bottoms be in person.

■ Bottoms also claims that the Union's failure to notify him of the grievance procedures initiated on his behalf is a breach of its duty of fair representation. In an August 14, 1987 telephone conversation, Herbert Simms, Jr., a Union representative, informed Wingerter that the Union would cooperate only with Bottoms himself. Wingerter informed Bottoms that the Union would cooperate with him personally with the filing of his grievance, but Bottoms never contacted the Union. There are no facts in the record to indicate that the Union ever attempted to contact Bottoms regarding the grievance procedures or the results. In fact, Bottoms never learned of the grievance procedure filed on his behalf until after this litigation was initiated.

Based on these facts, the issue before the Court is whether the Union had an affirmative obligation to notify Bottoms of the grievance procedures which the Union filed on his behalf. The Grievance–Arbitration Procedure set forth in the Agreement contains no express provision requiring the Union to notify an employee of pending grievance hearings and results. The procedures do allow the Union to initiate a grievance and "[i]n such a case the participation of the individual grievant is not required."[26] In addition, Bottoms had access to a copy of the Agreement at all pertinent times.[27] Although the facts do indicate that Bottoms was ignorant of the nature and specific provisions of the grievance procedures, it cannot be said that his ignorance was the fault of the Union. Moreover, the notice of removal did provide Bottoms with actual knowledge of the procedures. Furthermore, Bottoms' attorney notified him of the Union's refusal to cooperate with an attorney indicates that Bottoms had sufficient information regarding the grievance procedures. Under these circumstances, the Court finds that the Union had no duty to inform Bottoms concerning the grievance procedures under the Agreement.

---

employment. A grievance shall include, *but is not limited to,* the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.
Section 15.1, at 66.

**24.** *See Vernell v. United States Postal Service,* 819 F.2d 108 (5th Cir.1987); *Holdiness v. Stroud,* 808 F.2d 417 (5th Cir.1987); *Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252 (2d Cir.1975); and *Anderson v. Bailar,* 459 F.Supp.

792 (M.D.Fla.1978), *aff'd without opinion,* 619 F.2d 81 (5th Cir.1980), *cert. denied, Anderson v. Bolger,* 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980).

**25.** Agreement, Article 1, Section 1.1, at 1 and the Grievance–Arbitration Procedure, Article 15, at 66–79. *See also* 29 U.S.C. § 159(a).

**26.** Agreement, Article 15, Section 15.1, at 67.

**27.** *Supra* note 2.

■ Even if such a duty existed, Bottoms must show more than a mere breach of duty. Bottoms must also show that the Union's conduct was arbitrary, discriminatory, or in bad faith.[28] There is no evidence in the record which supports such a finding. Summary judgment is appropriate when there is no genuine issue of material fact in dispute. The party who has the burden at the trial cannot rely on mere allegations of his pleadings but must come forward with evidence to show that there is a genuine issue of material fact in dispute.[29] Bottoms' claim of breach of duty of representation is based on the Union's failure to inform him concerning the grievance. In his opposition, Bottoms argues that the issue "is whether any such negligence, failure or omission is or can be shown to be *arbitrary, discriminating* or *in bad faith*".[30] However, Bottoms does not provide any evidence to show that the Union was arbitrary, discriminating, or in bad faith. Furthermore, Bottoms failed to present any evidence to support of his claim for intentional infliction of emotional distress.

In summary, Bottoms has failed to provide any evidence to support a finding that a genuine issue of material fact exist regarding his claims against the Union. The record does show that the Union is entitled to summary judgment as a matter of law under the facts of this case.

### IV. Conclusion

The Court finds that Bottoms has failed to exhaust his administrative remedies against the USPS and the applicable time limits for using the available administrative procedures have run. Therefore, the motion of the United States Postal Service to dismiss or, in the alternative, for summary judgment is GRANTED.

Bottoms has failed to present any evidence tending to show that the Union's conduct was willful, arbitrary, discriminating, or in bad faith. Therefore, the motion of the National Post Office Mail Handlers, Watchmen, Messengers and Group Leaders Division of the Laborers' International Union, Local 312 for summary judgment is GRANTED.

IT IS FURTHER ORDERED that the plaintiff's suit be DISMISSED with PREJUDICE.

Judgment shall be entered accordingly.

**28.** *Freeman v. O'Neal Steel, Inc.,* 609 F.2d 1123 (5th Cir.1980), *reh'g denied,* 614 F.2d 294 (5th Cir.1980), *cert. denied* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). *See also Camacho v. Ritz–Carlton Water Tower,* 786 F.2d 242 (7th Cir.1986), *cert. denied* 477 U.S. 908, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986); *Taylor v. Belger Cartage Service, Inc.,* 762 F.2d 665 (8th Cir. 1985); *Findley v. Jones Motor Freight, Division Allegheny Corp.,* 639 F.2d 953 (3rd Cir.1981); *Coe v. United Rubber Workers of America,* 571 F.2d 1349 (5th Cir.1978).

**29.** *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**30.** Brief in Opposition to Defendants Motion to Dismiss with Prejudice, Alternatively, for Summary Judgment, at 5.