### Jodi BONSER, Plaintiff,

v.

### SAFEWAY, INC., a Delaware corporation, Defendant.

### Civ. A. No. 92–K–148.

United States District Court, D. Colorado.

Dec. 18, 1992.

Donald B. Gentry, Grant McHendrie, Denver, CO, for plaintiff.

Gregory A. Eurich, David D. Powell, Holland & Hart, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Jodi Bonser brings this action for breach of a collective bargaining agreement under federal labor law and breach of contract under state law. Defendant Safeway, Inc. moves for summary judgment, contending that Bonser's federal claim is defective because she did not exhaust her contractual remedies. In addition, Safeway argues that Bonser's state law claim is preempted by federal law. For the reasons stated below, I grant summary judgment in favor of Safeway.

### I. FACTS.

Bonser's claims stem from working conditions at Safeway Store No. 33 in Castle Rock, Colorado. On May 2, 1991, Bonser, a cake decorator for Safeway, filed a written grievance with her union, Local No. 7 of the United Food and Commercial Workers International Union (the "Union"). Bonser alleged that she "has been and is being harassed" by two of her supervisors, (Compl., Ex. 2), because she requested but was denied days off and was wrongly accused of poor job performance. (See Pacheco Dep. at 16; Bonser Dep. at 67.)

The collective bargaining agreement ("CBA") between Safeway and the Union

provides for a three-step grievance process. Step one is an informal conference among the employee, a union representative and the store manager. Step two requires the grievance, if not resolved at step one, to be reduced to writing and a second, more formal conference between the union and a Safeway designee to take place. If the grievance is not satisfactorily adjusted at step two, the third and final step is arbitration by a member of the Federal Mediation and Conciliation Service. (Compl., Ex. 1 at 54–55.)

On May 22, 1991, Safeway and the Union reached a settlement of Bonser's May 2 grievance at step two (the "Settlement"). In the written comments on the grievance form, Safeway management agreed "to talk to [Bonser's supervisors] in regards to harassment of Jodi and [sic] it be stopped." (Compl., Ex. 2.) According to Bonser, however, the harassment continued. Over the next several months, Bonser filed a number of additional grievances with the Union. Bonser reported that she was again denied days off despite her seniority, unfairly "written up" for job deficiencies and required to perform strenuous work outside her duties, even though she was pregnant. (*See* Mem. Br. Supp. Def.'s Mot. Summ. J., Ex. B.) Some of these grievances were resolved in a subsequent settlement reached on February 14, 1992. (*Id.*, Ex. E.)

On January 27, 1992, Bonser filed this action, alleging that Safeway breached the Settlement by continuing to harass her. Bonser claimed that Safeway's actions were a violation of section 301 of the Labor Management Relations Act of 1947 (the "Act"), 29 U.S.C. § 185, and a breach of contract under state law. Safeway moved to dismiss the complaint on February 18, 1992, arguing that Bonser's exclusive remedy was through the grievance procedure of the CBA. In a memorandum opinion and order entered by Judge Arraj on April 16, 1992, 1992 WL 78066, the court denied Safeway's motion to dismiss, reasoning that Bonser "had pursued her remedies as far as she was able and as far as was necessary" under the CBA, and that she was entitled to enforce the Settlement, even though Bonser did not seek arbitra-

tion or file another grievance. (*See* Mem. Op. Order at 4.) The case was reassigned to me on November 17, 1992.

Safeway now moves for summary judgment on Bonser's federal labor law claim, renewing its contention that Bonser failed to exhaust her contractual remedies. In addition, Safeway requests summary judgment on Bonser's state law breach of contract claim on preemption grounds. Bonser responds that Safeway's arguments relative to her federal claim were disposed of in Judge Arraj's April 16 memorandum opinion and that her state law claim is not preempted because it does not require consideration of the terms of the CBA.

## II.  MERITS.

The central question in this case is whether Bonser can bring action against Safeway for breach of the Settlement when she has not sought to enforce it through the CBA grievance procedure. To decide this question, I apply the familiar standards for summary judgment. Summary judgment is proper when the record, viewed in the light most favorable to the party opposing the motion, shows no genuine dispute over a material fact and that the moving party is entitled to judgment as a matter of law. *See Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991); *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110–11 (10th Cir. 1991). A moving party may rely on the pleadings, affidavits, depositions and other materials to show the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c). The party opposing the motion must then set forth specific facts showing a genuine issue for trial and may not merely rely on the pleadings. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

■ Both parties agree that the general rule regarding actions for breach of a collective bargaining agreement is that an employee must attempt to exhaust her contractual remedies before she can bring suit under section 301 of the Act. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652,

85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). This is not an absolute rule. Exhaustion is not required where the plaintiff can show that the union breached its duty of fair representation or where further resort to contractual remedies under a collective bargaining agreement would be futile. *See Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967).[1]

■ In this action, Bonser alleges that further prosecution of her harassment claim under the grievance procedure would be futile because Safeway could again agree to a settlement but fail to adhere to it. Safeway responds that Bonser cannot establish futility without at least attempting to enforce the Settlement through arbitration, step three of the grievance process, or by initiating a new grievance. Case law construing exhaustion requirement under the Act does not bear out Safeway's contention.

For example, in *National Post Office Mail Handlers Local No. 305 v. United States Postal Service*, 594 F.2d 988 (4th Cir.1979), the appellate court reinstated a union's claim against the Postal Service for failure to adhere to several settlement agreements. There, the union representing postal employees instituted a grievance against the Postal Service under the procedures of its collective bargaining agreement. The union negotiated a favorable resolution before the grievance went to arbitration, but the Postal Service failed to implement the resolution. The union then filed a new grievance for breach of the resolution, and again it prevailed. When the Postal Service still failed to comply, the union brought suit under section 301 of the Act (and similar legislation governing the Postal Service), seeking a declaration that the Postal Service was obligated to implement the grievance settlements. *See id.* at 990–91.

The Postal Service moved to dismiss the union's complaint, arguing that the union had failed to exhaust its remedies by proceeding to arbitration, even though the settlements were reached at earlier steps in the grievance process. The district court agreed and dismissed the action. On appeal, the Fourth Circuit reversed:

> We think that on the allegations of the instant case further exhaustion of contractual remedies is not required. The local union alleges that it employed the grievance procedures specified in the contract and prevailed, and it then employed the grievance procedures by reason of defendant's failure to implement the prior resolutions and again prevailed. But, notwithstanding, defendants have still failed and refused to implement the resolutions. It is, of course, true that the collective bargaining agreement does not specify that the favorable resolution of a grievance short of arbitration is final and binding, but neither the national union nor the local union has a right to go to binding arbitration when it has prevailed at a grievance step prior to arbitration. Under the circumstances presented here, if the Postal Service remains adamant in its refusal to implement grievance settlements, aggrieved employees or the union acting in their behalf would be subjected to an endless, fruitless succession of grievance complaints and never realize the benefits of an award. Further exhaustion manifestly would be ineffective.

*Id.* at 991–92.

Admittedly, the situation in *National Post Office Mail Handlers* differs from this case in that the union first attempted to enforce its settlements through renewed use of the grievance procedure. In more recent cases, however, courts have upheld the right of unions and employees to enforce binding settlements reached at an intermediate step in the grievance process even absent successive, contractual attempts at enforcement. *See, e.g., Bakers Union Factory, No. 326 v. ITT Continental Baking Co.*, 749 F.2d 350, 355 (6th Cir.1984); *United Mine Workers Dist. No.*

---

**1.** Although Safeway argues that Bonser must demonstrate the union's breach of its duty of fair representation, the circumstances excusing exhaustion are disjunctive, not conjunctive. Bonser makes no claim that the union breached its duty of fair representation, nor is she required to. Therefore, I need not consider Safeway's arguments on this score.

*5 v. Consolidation Coal Co.,* 666 F.2d 806, 809 (3d Cir.1981); *United Mine Workers, Dist. No. 2 v. Barnes & Tucker Co.,* 561 F.2d 1093, 1096 (3d Cir.1977). Thus, "[s]ettlement agreements are treated as arbitration awards for enforcement purposes" under the Act. *United Mine Workers, Dist. 4 v. Cyprus Emerald Resources Corp.,* 681 F.Supp. 271, 278–79 (W.D.Pa.1988).

■ Here, the CBA permits arbitration of a grievance "[i]f the grievance is not satisfactorily adjusted in Step 2." (Compl., Ex. 2 at 54.) Consequently, like in *National Post Office Mail Handlers,* Bonser could not have sought arbitration when Safeway allegedly violated the Settlement because the CBA permits arbitration only if there is no adjustment of the grievance at Step two. Nor was she required to institute new grievance proceedings to enforce the Settlement. The above cases make clear that once a binding settlement has been reached and management demonstrates an intent not to honor it, the employee need not engage in a potentially futile effort to further enforce the settlement through the contract mechanism.

■ For these reasons, I agree with Judge Arraj's conclusion in denying Safeway's motion to dismiss that Bonser met the exhaustion requirement of the Act. I believe, however, that the inquiry does not end here. While settlements reached at an intermediate step of the grievance process may be enforced under the Act, two additional factors are crucial. First, the terms of the settlement agreement must be clear, unambiguous and capable of enforcement. *Consolidation Coal Co.,* 666 F.2d at 810; *Barnes & Tucker Co.,* 561 F.2d at 1097–98. "[C]ourts will not attempt to enforce a settlement agreement that is too vague or ambiguous in its meaning or effect." *Consolidation Coal Co.,* 666 F.2d at 810. Second, there can be no factual disagreement over whether subsequent events constitute a violation of the settlement. "Thus, even where the parties are not in dispute over the actual terms of a grievance settlement, but only over whether a breach of those terms has occurred as presented by the circumstances of a subsequent grievance,

the courts must still defer to the parties' bargained-for method of dispute resolution." *United Mine Workers Dist. 28 v. VP–5 Mining Co.,* 630 F.Supp. 1210, 1214 (W.D.Va.1986); *see also Consolidation Coal Co.,* 666 F.2d at 811; *National Post Office Mail Handlers,* 594 F.2d at 992 ("factual disputes about whether any grievance settlements have been violated" requires matter to be decided under grievance procedures, not in court).

■ In this case, neither of the above requirements is satisfied. The Settlement stated only that management was to speak to Bonser's supervisors "in regards to the harassment and [that] it be stopped." (Compl., Ex. 2.) The grievance form itself does not define the term "harassment" or identify any particular actions that Safeway management is prohibited from taking in the future. It is less specific than other arbitration awards and settlements denied enforcement. *See, e.g., Consolidation Coal Co.,* 666 F.2d at 810 (terms of settlement as to contracting out of repair and maintenance work too general to permit enforcement); *VP–5 Mining Co.,* 630 F.Supp. at 1215 (settlement offering "little guidance for resolving factual and credibility issues involved in dispute over 'equalization of time' " prevented court from enforcing settlement.) To assess whether Safeway violated the Settlement, I would be required to determine what the parties meant by the vague term "harassment," whether Safeway's post-Settlement conduct fell within that definition, and whether that conduct was a breach of the CBA. These determinations should be made in the first instance through the parties' contractual dispute resolution mechanism. The Settlement is simply too vague in its definition of the proscribed conduct for a court to determine its prospective application.

Second, many of the events which Bonser alleges evidence Safeway's breach of its obligation to stop the harassment differ from those underlying the Settlement. Although courts diverge on the degree of factual similarity required to support an action to enforce a settlement agreement under the Act, *see generally Local 1545,*

*United Mine Workers of Am. v. Inland Steel Coal Co.*, 876 F.2d 1288, 1293–94 (7th Cir.1989); *District 12, United Mine Workers v. Peabody Coal Co.*, 602 F.Supp. 240, 242 (S.D.Ill.1985), most require "positive assurance" that acts complained of are the same as those underlying the settlement agreement. *See, e.g., Consolidation Coal Co.*, 666 F.2d at 811; *Cyprus Emerald Resources Corp.*, 681 F.Supp. at 278–79; *Peabody Coal Co.*, 602 F.Supp. at 242–43. Under this view, if there is any doubt whether a grievance award or settlement was intended to cover a subsequent dispute, "the parties should be returned to their grievance procedure and arbitration, for it is an arbitrator, and not the court, who is to decide whether the same issue has already been resolved in an earlier proceeding." *Consolidation Coal Co.*, 666 F.2d at 811.

In other cases, courts have applied an arguably less stringent standard, requiring "material factual identity" between the facts upon which the earlier agreement was based and the facts relied on to show non-compliance. *Oil, Chemical & Atomic Workers Local 4–16000 v. Ethyl Corp.*, 644 F.2d 1044, 1055 (5th Cir.1981) (must be "beyond argument that there is no material difference between the current facts and the facts on which the prior arbitration was based"); *see also Inland Steel Coal Co.*, 876 F.2d at 1295–96 (upholding dismissal of action on summary judgment where plaintiff failed to allege "sufficiently egregious" facts showing "substantially identical" conduct upon which settlement was based and company's persistent and wilful disregard of settlement).

Under either standard, the result in this case is the same. Most of the events which Bonser cites to support her claim of continued harassment differ substantially from those forming the basis for her May 2 grievance. Bonser's primary complaint in her first grievance dealt with scheduling and unjustified accusations of poor job performance. While Bonser includes allegations of a similar nature to support her claim of continued harassment, she further alleges that Safeway management required her to perform work outside her duties, did not pay her for the additional work and verbally chastised and threatened her. These events are too dissimilar to those underlying the Settlement for me to conclude that it is beyond argument that there is no material difference between them and they are proscribed by the Settlement. *Ethyl Corp.*, 644 F.2d at 1055. For these reasons, I grant summary judgment in favor of Safeway on Bonser's first claim for relief under the Act.

■ Safeway also moves for summary judgment on Bonser's second claim for breach of contract under state law, arguing that it is preempted by the Act. The parties concur that a state law claim based on a labor agreement is preempted when its resolution "is substantially dependent upon analysis of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985); *see also Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988); *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 529 (10th Cir.1992). Bonser urges me to focus on the breach of the Settlement itself, not the CBA, claiming that "whether some or all of [Safeway's] acts may also be violations of the CBA is immaterial," (Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 9), and that I need only interpret the terms of the Settlement. I disagree.

Preemption is not limited to cases "where the precise meaning of precise words in the CBA is the crux of the state law claim." *Jones v. General Motors Corp.*, 939 F.2d 380, 383 (6th Cir.1991). Where the state law claim is based on a settlement reached through dispute resolution procedures under a CBA, "the settlement itself is a creature wholly begotten by the CBA" and the interpretation of its terms necessarily requires reference to the CBA. *Id.* In this instance, I cannot consider whether Safeway has breached the Settlement by continuing to harass Bonser without determining what constitutes harassment. To do that, I must refer to the terms of the CBA. Clearly, resolution

of Bonser's state law claim is "substantially dependent" upon an analysis of the CBA, and it is preempted by federal law. Accordingly,

IT IS ORDERED THAT Safeway's motion for summary judgment is GRANTED.