The **CITY AND COUNTY OF DENVER,**
et al., Plaintiffs,

v.

**ADOLPH COORS COMPANY,**
et al., Defendants.

**Civ. A. No. 91–F–2233.**

United States District Court,
D. Colorado.

Jan. 13, 1993.

Daniel E. Muse, T. Shaun Sullivan, Steven J. Coon; Russell E. Yates, Carolyn L. Buchholz, James D. Ellman, Denver, CO; P.B. ("Lynn") Walker, Englewood, CO, and Robert S. Treece, and Daniel S. Maus, Denver, CO, for plaintiffs.

Linda Rockwood and James L. Harrison, Denver, CO, for Earth Sciences, Inc.

## ORDER REGARDING ENFORCEMENT OF SETTLEMENT AND SUMMARY JUDGMENT:

### 1993-2

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving environmental contamination at the Lowry Landfill site ("Lowry"), operated at various times by Plaintiffs City and County of Denver ("Denver"), Waste Management of Colorado, Inc. ("WMC"), and Chemical Waste Management, Inc. ("CWM"). This matter comes before the Court on Defendant Earth Sciences, Inc.'s ("ESI") Motion for Summary Judgment, to Dismiss With Prejudice, and to Enforce Settlement Agreement. Jurisdiction is based on 28 U.S.C.A. § 1331 (West 1992). The parties have fully briefed the issues. For the reasons stated below, the motion is GRANTED.

## I.

ESI and Plaintiffs dispute whether they have entered into a binding settlement agreement ("the Agreement").

ESI was initially identified by the EPA as having contributed to the environmental waste at Lowry two waste streams totaling over six million gallons. In June 1992, EPA revised ESI's share of the waste to a mere 3800 gallons, attributing the remaining six million gallons to Alumet Partnership ("Alumet"), a partnership in which ESI is a general partner. ESI subsequently wrote Plaintiffs requesting an offer of settlement as a *de minimis* party, in accordance with Plaintiffs' usual policy of allowing *de minimis* settlor status to contributors of under 300,000 gallons of waste. Plaintiffs' agreement to negotiate such a settlement was conditioned on an agreement between the parties that Plaintiffs would move to amend the First Amended Complaint to join Alumet as a defendant and that ESI would not oppose the joinder.

After considerable negotiations and correspondence back and forth, the parties achieved a final draft of the Agreement. Plaintiffs sent the Agreement to ESI for signing and instructed ESI to return the Agreement so that Plaintiffs could execute it. One of Plaintiffs' numerous counsel represented to the Court in a status conference on October 23, 1992, that the parties had reached a settlement. Before Plaintiffs executed the Agreement, however, the Court denied Plaintiffs' motion to add Alumet as a party defendant. Plaintiffs then refused to sign the Agreement.

ESI seeks summary judgment on all claims against it and enforcement of the Agreement to dismissing ESI with prejudice. ESI disputes that Plaintiffs ever made joinder of Alumet a condition of settlement. Nowhere in the Agreement is such a condition either stated or implied.

## II. Summary Judgment Standard

Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 242 (10th Cir.1991); *Metz v. United States*, 933 F.2d 802, 804 (10th Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991); *Continental Casualty Co. v. P.D.C., Inc.*, 931 F.2d 1429, 1430 (10th Cir.1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Dayco Prods., Inc.*, 758 F.Supp. 630, 631 (D.Colo.1990).

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. *Newport Steel Corp. v. Thompson*, 757 F.Supp. 1152, 1155 (D.Colo. 1990). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir.1991); *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 889 (10th Cir.1991).

In a motion for summary judgment, the moving party's initial burden is slight. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), the Supreme Court held that the language of rule 56(c) does not require the moving party to show an absence of issues of material fact in order to be awarded summary judgment. Rule 56 does not require the movant to negate the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552–53. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.*

Once the movant has made an initial showing, the burden of going forward shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552–53. The nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan*, 931 F.2d 636,

639 (10th Cir.1991). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir.1987).

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact remaining. In *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11, the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

### III.

■ A trial court has the inherent power to summarily enforce settlement agreements entered into by the litigants in cases before the court. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993); *Dankese v. Defense Logistics Agency*, 693 F.2d 13, 16 (1st Cir.1983); *Bonser v. Safeway, Inc.*, 809 F.Supp. 799 (D.Colo. 1992). Settlement agreements are favored by the courts. *Autera v. Robinson*, 419 F.2d 1197, 1199 (D.C.Cir.1969). The terms of the settlement agreement must be clear, unambiguous, and capable of enforcement. *Bonser*, 809 F.Supp. at 803; *United Mine Workers of America District No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 810 (10th Cir.1981). Settlement agreements are construed in the same way as contracts

in determining whether and how they should be enforced. *Republic Resources Corp. v. ISI Petroleum West Caddo Drilling Program 1981*, 836 F.2d 462, 465 (10th Cir.1987); *Mulvaney v. St. Louis Southwestern Railway Co.*, 1992 WL 223771 (D.Kan. Aug. 13, 1992). The question before the Court is whether the parties entered into an enforceable settlement agreement.

### A. Intent of the Parties

■ Plaintiffs argue, first, they did not and could not have intended to release ESI from its potential partnership liability for over six million gallons of Alumet's waste for the price of 3800 gallons,[1] and second, Plaintiffs' failure to execute the Agreement is fatal to its enforcement.

Nowhere does the Agreement mention either joinder of Alumet or the Alumet waste stream. Although Plaintiffs in their brief repeatedly refer to the joinder of Alumet as a "condition precedent," joinder was never expressly made a condition in either the negotiations or the Agreement itself. Plaintiffs can find no comfort in their euphemistic assertion that "[i]t has also been plaintiffs' practice not to *clutter* settlement agreements with conditions precedent that must occur before plaintiffs execute agreements." Plain. Opp. to ESI's Mot. for Summ.J., at 5 (emphasis added). Such 'clutter' is the stuff of which contracts are made. No contract would be safe if a party could keep its conditions precedent close to the vest.

Distinguishing between the waste streams of ESI and Alumet was also apparently not thought to be particularly important. When the Agreement refers to ESI and dismissal, its language is unqualified

---

**1.** Plaintiffs cite ESI's initial letter advising Plaintiffs that the EPA had revised ESI's waste stream liability to 3800 gallons and requesting *de minimis* settlement (presumably, Plaintiffs appear to suggest, for that 3800 gallons). Plaintiffs also cite ESI's responses to discovery, which distinguished between discovery for the 3800 gallons, which ESI said it would no longer respond to, and discovery for Alumet's share, which ESI did respond to. ESI claims it responded because Alumet's joinder had not yet been refused by the Court and ESI saw no

reason that it would be; therefore, ESI claims, it answered discovery for the information it had on Alumet.

We note that one problem with Plaintiffs' very persuasive argument—that it could not have intended to let 6 million gallons off the hook—is that with or without the Agreement, it would not be required to do so. Enforcement of the Agreement does not extinguish Plaintiffs' right to recover from Alumet for the six million gallons in another action.

and unambiguous: "Denver and Waste [Management] shall voluntarily dismiss ESI *with prejudice* from *all claims* in the [sic] *City and County of Denver, et al. v. Coors, et al.,* to [sic] 91–F–2233 (D.Colo.) upon payment by Settlor pursuant to paragraph 6(a)." ESI's Mot. for Summ.J.; Exh. 5 (emphasis added). ESI argues that because "all claims" includes the claims for the waste stream now attributable to Alumet, its dismissal is absolute.

There is no justification for Plaintiffs' failure to qualify the entire Agreement by stating the seemingly crucial fact that it dismisses only 3800, not six million, gallons of waste. There is also no justification for Plaintiffs' failure to place a clause in the Agreement stating that Alumet's joinder is a condition precedent. Plaintiffs imply from their stated intention to dismiss ESI only as to the 3800 gallon waste stream that they would not have dismissed ESI entirely from the case under any circumstances. However, it is clear from the Agreement that Plaintiffs *did* agree to dismiss ESI entirely, with prejudice, and only their failure to sign the Agreement stopped the process. The only difference between Plaintiffs' alleged pre-Agreement intent and the language of the Agreement itself is the Court's intervening denial of the attempted joinder of Alumet. Yet any potential ruling of the Court, as we have noted, was never made a condition in the Agreement. Further, if the Court had joined Alumet and Plaintiffs had then signed the Agreement, there can be no doubt the Agreement would have required dismissal of ESI with prejudice. This would be true even if we accepted Plaintiffs' representation of its intent.

■ Plaintiffs' secret intent is immaterial. "[M]utual assent is to be judged only by overt acts and words rather than by the hidden or secret intention of the parties." 1 S. Williston, A TREATISE ON THE LAW OF CONTRACT § 4.1 (4th ed. 1990) (citing 42 cases). Plaintiffs admit they never discussed their purported intentions with ESI: "There was never any discussion between ESI and the plaintiffs, nor was it ever plaintiffs' intention—that ESI would be dis-

missed if Alumet could not be joined or that ESI's dismissal would release ESI from liability as a general partner of Alumet for any judgment entered against Alumet." Plain.Opp. to ESI's Mot. for Summ. J, at 3; Walker Affid., ¶ 6. Further, where a contested term is unambiguous, a contract is formed, regardless of the unexpressed intention one party may have had. *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1278 (2d Cir.1989). Here, no term is even contested; rather, Plaintiffs merely contest the irrelevant matter of intent. On the other hand, the language of the Agreement is clear and unequivocal, precluding even disagreement as to its terms. Therefore we reject Plaintiffs' contention that there was no meeting of the minds. We next turn to the question of whether Plaintiffs' refusal to execute the Agreement means they did not accept the Agreement.

### B. Execution as Condition Precedent

■ "It is established that a signature is not always necessary to create a binding agreement." *Presidential Motor Yacht Corp. v. President Marine, Ltd.,* 753 F.Supp. 7, 13 (D.D.C.1990). It is equally true that "the purpose of a signature is to demonstrate 'mutuality of assent' which could as well be shown by the conduct of the parties." *Id.* (citations omitted). Plaintiffs state that both their lack of mutual assent and their intent that execution be a condition to agreement are evidenced by the parties' correspondence, the draft settlement agreement, and their Ninth Settlement Progress Report to the Court ("Plaintiffs' Report").

Plaintiffs do not point the Court to any such expressions of intent in the parties' correspondence or any draft agreement. On the contrary, in a letter to ESI's counsel, Plaintiffs' counsel Lynn Walker, Esq., wrote: "Upon our receipt of all three of the Agreements that you have signed, a Guaranty *will be* executed by Waste Management, Inc. and the Agreements *will be* executed by WMC, CWM, and Denver." Def. Mot. for Summ.J., Exh. 9, p. 1 (emphasis added). Furthermore, Plaintiffs' Report to the Court that the parties had reached an

agreement on the terms of settlement and that final documents were to be "executed" does nothing to further Plaintiffs' argument that both parties understood the alleged importance of execution. Indeed, we note Plaintiffs' report stated clearly "Plaintiffs have reached an agreement on the terms of settlement with [ESI]."

 Although a party is not bound by an oral agreement if it does not intend to be bound until a formal document is executed, "the party arguing that the parties intended not to be bound until the execution of a formal writing has the burden of proving 'either that both parties understood they were not to be bound until the executed contract was delivered, or that the other party should have known that the disclaiming party did not intend to be bound before the contract was signed.'" *PDL Vitari Corp. v. Olympus Industries, Inc.*, 718 F.Supp. 197, 206 (S.D.N.Y.1989), *quoting Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 261 (2d Cir.1984), *cert. denied*, 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984); *see also Griego v. Kokkeler*, 543 P.2d 729, 730 (Colo.App.1975) (holding that "where there is a complete agreement, the fact that certain formalities remain to be performed, such as the execution of written releases, does not reduce such agreement to the status of mere negotiations").

 It is clear the parties did not mutually understand that execution was necessary. As to whether the enforcing party should have known the other party did not intend to be bound, the *Olympus* Court outlined four factors: (1) whether the parties have stated an intention not to be bound absent an executed writing, (2) whether one party has performed partially and the other party has accepted such performance, (3) whether there are no issues left to be negotiated such that the signing of the contract is merely ministerial, and (4) whether the agreement concerns complex business matters such that a written agreement would be the norm, not the exception.

We do not believe Plaintiffs have adequately met this burden on any point.[2] *Olympus*, 718 F.Supp. at 206–07. "Although the agreement was not formally executed, there is insufficient evidence demonstrating that the execution of a written document was a condition precedent to settlement." *Schaap v. Executive Industries, Inc.*, 760 F.Supp. 725 (N.D.Ill.1991).

 We also do not believe that any of Plaintiffs' later conduct negates their apparent acceptance of the Agreement. Rather, it appears that Plaintiffs agreed to settlement, represented as much to the Court, drew up the Agreement in their own offices, forwarded it to ESI with the unqualified statement that it would be executed upon its return, and only attempted to deny their acceptance upon the occurrence of an event not mentioned in the Agreement. *Cf. Petty*, 849 F.2d at 132 (finding settlement existed where defendant made an offer of settlement, plaintiff accepted it, and plaintiff affirmed his acceptance in open court). Plaintiffs state that their many settlements in this case would be greatly hampered if Plaintiffs could be deemed to have agreed to written terms of settlement before they had undertaken "this final review" and executed the written settlement agreement. We agree. In the future, Plaintiffs should include any final review and execution as conditions of agreement.

In the interests of forestalling future disagreements and streamlining future litigation, the Court strongly suggests the parties consider altering the Agreement's language to state clearly that the claims *for the 3800 gallon waste stream* are dismissed from this case with prejudice, ESI is dismissed with prejudice, but Plaintiffs, of course, are not precluded from suing Alumet.

**C. Evidentiary Hearings**

 Plaintiffs assert the disagreements between the parties as to Plaintiffs' intent shows that there is a disputed issue of

---

**2.** We note also that whereas the *Olympus* standard deals with the situation in which a *written* contract is lacking, ESI and Plaintiffs had not only agreed, but had memorialized their agreement in writing.

material fact. Plaintiffs' view of the matter would suggest that an evidentiary hearing be held. *See, e.g., United States v. Hardage,* 982 F.2d 1491 (10th Cir.1993) (requiring evidentiary hearing on whether offer to settle had been accepted or withdrawn before acceptance); *Chicano Police Officer's Ass'n v. Stover,* 624 F.2d 127, 132 (10th Cir.1980) (requiring hearing on whether attorneys' fees, not mentioned in settlement agreement, were discussed and intended to be covered by cash settlement); *Autera v. Robinson,* 419 F.2d 1197, 1199 (D.C.Cir.1969) (requiring hearing on whether parties had, as their counsel stated, agreed to settlement or, as parties stated, held off decision); *Callie v. Near,* 829 F.2d 888, 890 (9th Cir.1987) ("Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.") (emphasis in original). However, "no hearing is necessary where there is no dispute as to the existence of a settlement." *Tiernan v. Devoe,* 923 F.2d 1024 (3rd Cir.1991); *Petty v. Timken Corp.,* 849 F.2d 130, 132 (4th Cir.1988). While evidentiary hearings may sometimes be required, if "both parties made representations to the court that agreement had been reached, there can be no factual dispute that a settlement had been consummated." *Vari-O-Matic Machine Corp. v. New York Sewing Machine Attachment Corp.,* 629 F.Supp. 257, 259 (S.D.N.Y.1986). As we have explained in greater detail above, we believe there was a settlement in this case. We further find that the opportunity for cross-examination afforded in a hearing would not aid Plaintiffs because we come to our decision based on our interpretation, as a matter of law, of Plaintiffs' own representations and affidavits, and not on any allegations of ESI that could fruitfully be attacked on cross-examination.

D. Attorneys' Fees

 The Agreement provides that the prevailing party in any dispute over the Agreement shall be provided reasonable attorneys' fees and other costs incurred. In accordance with the Agreement, Plaintiffs are to pay to ESI reasonable attorneys' fees incurred in bringing this motion and the motion for protective order. Counsel for ESI are to file affidavits regarding fees incurred and a detailed description of time spent on this matter.

ESI's motion for protective order is DEEMED MOOT.

### IV.

Accordingly, it is ordered that:

(1) Defendant Earth Sciences, Inc.'s Motion for Summary Judgment, to Dismiss With Prejudice, and to Enforce Settlement Agreement, filed November 12, 1992, is GRANTED. ESI is dismissed from this case and cause of action with prejudice.

(2) Plaintiffs are DIRECTED to pay to ESI reasonable attorneys' fees incurred in bringing this motion and the motion for protective order. Counsel for ESI are to file affidavits regarding fees incurred and a detailed description of time spent on this matter by Friday, January 22, 1993.

(3) Earth Sciences, Inc.'s Motion for Protective Order, filed November 12, 1992, is DEEMED MOOT.